LADDIE G. PRUCHA, APPELLEE, V. DEPARTMENT OF MOTOR
VEHICLES, STATE OF NEBRASKA, ET AL., APPELLANTS.

110 N. W. 2d 75

Filed June 23, 1961.   No. 34960.

*Clarence A. H. Meyer,* Attorney General, and *Cecil S. Brubaker,* for appellants.

*James E. Abboud, Jr.,* and *James J. Fitzgerald,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

Laddie G. Prucha, plaintiff, perfected an appeal from an order of the Director of Motor Vehicles entered on June 13, 1960, revoking the motor vehicle operator's license of the plaintiff for failure to submit to a chemical test of his blood or urine under the provisions of sections 39-727.03 to 39-727.12, R. S. Supp., 1959. The plaintiff's petition on appeal was filed in the district court for Sarpy County on June 27, 1960, and a stay of the order of revocation was entered by that court on the same day. The defendants, Department of Motor Vehicles, State of Nebraska, and Alvin N. Scissors, Director of Motor Vehicles of the State of Nebraska, the latter hereinafter referred to as the director, filed a general demurrer to the plaintiff's petition on July 22, 1960, on the ground that the petition failed to allege facts sufficient to constitute a cause of action against such defendants. On September 2, 1960, the trial court overruled the defendants' demurrer. On October 14, 1960, the defendants filed notice of their election to stand on their demurrer. On November 4, 1960, default judgment was rendered against the defendants by the trial court, and an order was entered setting aside the order of the director revoking the motor vehicle operator's license of the plaintiff. The defendants appealed to this court.

The plaintiff's petition had attached to it the transcript from the Department of Motor Vehicles of Nebraska, including the Safety Patrol intoxication report dated May 2, 1960, which recited the plaintiff's name; the number of his driver's license; the number of his automobile license; his address; the date of his arrest, April 18, 1960, at 10:10 p.m.; the place of arrest; and the

reasons for believing the person arrested was under the influence of intoxicating liquor while driving an automobile.

At the time of his arrest, the plaintiff was asked if he would submit to a fluid or blood test for the purpose of determining the alcoholic content in his system, and he refused to take the test.

On May 12, 1960, the director notified the plaintiff by mail of a hearing to be held before the director on June 6, 1960, at which time the plaintiff should show cause why his driver's license should not be revoked. By telegram directed to the plaintiff, this hearing was reset for June 10, 1960. Thereafter, on June 13, 1960, an order of the director was entered revoking the motor vehicle operator's license of the plaintiff for a period of 1 year from the date of June 10, 1960, for failure to show cause why such license should not be revoked as a result of his failure to submit to a test as provided for in sections 39-727.03 to 39-727.12, R. S. Supp., 1959. Notice of this order was sent to the plaintiff by letter the same day. The plaintiff perfected his appeal to the district court for Sarpy County from the order of the director revoking his driver's license under the provisions of section 39-727.11, R. S. Supp., 1959, and section 60-420, R. R. S. 1943.

The plaintiff's petition, insofar as necessary to be considered here, is as follows: "That the defendants' decision to revoke the plaintiff's license in accordance with the afore-mentioned statute was arbitrary and capricious and in violation of the State Constitution of the State of Nebraska for the following reasons, to-wit: 1. That plaintiff was not fully advised of the consequences of failure to comply with said statute. 2. That plaintiff complained of a heart condition which prevented him from taking any blood tests. 3. That he was not convicted of the offense of operating a motor vehicle under the influence in the original court. 4. This statute violates the Due Process Clause (Section 3), and the Giving

Evidence Against Oneself Clause (Section 12), both from the Bill of Rights, Constitution, State of Nebraska, 1875."

The plaintiff prayed for an order staying the revocation of his driver's license pending a final determination of the review by the district court, and for decree permanently setting aside and declaring null and void the order of June 10, 1960, revoking his driver's license.

"A general demurrer admits all allegations of fact in the pleading to which it is addressed, which are issuable, relevant, material, and well pleaded; but does not admit the pleader's conclusions of law or fact." Gerard v. Steinbock, 169 Neb. 828, 101 N. W. 2d 194.

In passing on a demurrer to a petition, the court will consider an exhibit attached thereto and made a part thereof. See Valentine Oil Co. v. Powers, 157 Neb. 71, 59 N. W. 2d 150.

In the instant case the plaintiff attached the transcript heretofore mentioned to his petition and made it a part of his petition, therefore, it is also to be considered in passing on the demurrer.

The plaintiff raises the question that the defendants are limited to the assignment of error set forth in their brief, citing rule 8a 2 (4) of this court, and decisions in accord with this rule.

The defendants' assignment of error is that the trial court erred in overruling the defendants' demurrer to the plaintiff's petition. This assignment of error specifically relates to the matters raised in the plaintiff's petition in the trial court. The plaintiff's contention is without merit.

The plaintiff also contends that the overruling of the defendants' demurrer is not a final order, that it is an interlocutory order and therefore not an appealable order.

In Hadden v. Aitken, 156 Neb. 215, 55 N. W. 2d 620, 35 A. L. R. 2d 1003, the defendants demurred to the petition and, upon the demurrer being overruled, elected to stand thereon. The court thereupon entered judgment

for the plaintiff wherein it directed the defendants, and each of them, to suspend the order of October 30, 1951. This case related to the suspension of a motor vehicle operator's license to drive an automobile. The court also ordered that the license, registration certificate, and license plates of the plaintiff "be and remain" in full force and effect and that plaintiff have all the privileges evidenced thereby. The defendants appealed from this judgment.

In the instant case a like situation appears. Apparently the plaintiff failed to note that a default judgment had been entered against the defendants.

The plaintiff is in accord with the defendants' proposition of law in substance as follows.

"All persons are presumed to know the general public laws of the state or country where they reside, and the legal effect of their acts." 31 C. J. S., Evidence, § 132, p. 751.

The general rule is that all persons are presumed to know and are bound to take notice of general public laws of the country or state where they reside as well as the legal effect of their acts. See, 20 Am. Jur., Evidence, § 211, p. 208; Anderson v. MacDuff, 208 Misc. 271, 143 N. Y. S. 2d 257; People v. Kovacik, 205 Misc. 275, 128 N. Y. S. 2d 492.

The language of the statute is clear and there is nothing on its face that requires the police officer to go any further than request the motorist to submit to the test. When the words of the statute are plain, clear, and distinct there is no occasion to resort to other means of interpretation to restrict or extend the meaning. The petitioner is presumed to know the law and he should acquaint himself, at least, with those laws which would affect him. See Anderson v. MacDuff, *supra*.

The allegation of the plaintiff that he was not fully advised of the consequences of his failure to comply with the statutes does not state facts sufficient to constitute a cause of action.

The law here involved is commonly referred to as the "implied consent law."

Section 39-727.03, R. S. Supp., 1959, provides: "Any person who operates or has in his actual physical control a motor vehicle upon a public highway in this state shall be deemed to have given his consent to submit to a chemical test of his blood or urine for the purpose of determining the amount of alcoholic content in his body fluid. The test shall be administered at the direction of a law enforcement officer whenever the person has been arrested for any offense involving operating a motor vehicle under the influence of alcoholic liquor in violation of a statute or a city or village ordinance when the arresting officer has reasonable grounds to believe that before his arrest the person was driving while under the influence of alcoholic liquor."

Section 39-727.04, R. S. Supp., 1959, provides in part: "The person so arrested or taken into custody may choose whether the test so required shall be a chemical test of his blood or urine."

Section 39-727.08, R. S. Supp., 1959, provides: "If a person so arrested shall refuse to submit to the test provided for in section 39-727.03, it shall not be given, and the arresting officer shall make a sworn report to the Director of Motor Vehicles stating that he had reasonable grounds to believe that the person was operating or in actual physical control of a motor vehicle upon a public highway while he was under the influence of alcoholic liquor, and the facts upon which such belief was based, that such person was placed under arrest, and that he refused to submit to the test."

Section 39-727.09, R. S. Supp., 1959, provides in part: "Upon receipt of the officer's report of such refusal, the Director of Motor Vehicles shall notify such person of a date for hearing before him as to the reasonableness of the refusal to submit to the test. The notice of hearing shall be served by the director by mailing it to such person by certified or registered mail to the last-known

residence address of such person, * * * at least ten days before the hearing. After granting the person an opportunity to be heard on such issue, if it is not shown to the director that such refusal to submit to such chemical test was reasonable, the director shall summarily revoke the motor vehicle operator's license * * * of such person, for a period of one year from the date of such order."

Section 39-727.10, R. S. Supp., 1959, provides in part: "If the Director of Motor Vehicles revokes the operator's license * * * under the provisions of sections 39-727.03 to 39-727.12, he shall reduce his order of revocation to writing, and shall notify the person in writing of the revocation."

Section 39-727.11, R. S. Supp., 1959, provides in part: "Any person who feels himself aggrieved because of such revocation may appeal therefrom to the district court of the county where the alleged events occurred for which he was arrested, in the manner prescribed in section 60-420."

Apparently, from the second allegation of the plaintiff's petition he claims that the revocation of his license was arbitrary and capricious and in violation of the Constitution of the State of Nebraska because the plaintiff complained of a heart condition which prevented him from taking any blood tests, therefore his refusal to do so was reasonable.

We have set forth the provisions of section 39-727.03, R. S. Supp., 1959. The mere fact that the plaintiff complained of something does not allege such fact to be so, and was not a pleading of the ultimate fact that such condition would prevent the taking of the test. As shown by the above-cited sections of the statute, there was an alternative method for the testing of the alcoholic content of the body fluid, by testing the urine.

The allegation that the plaintiff complained of a heart condition which prevented him from taking a blood test, implying that that was a reasonable excuse for not taking the test, is an allegation of a conclusion which is

erroneous under the terms of the statute.

The plaintiff in his petition alleges that the revocation of his driver's license was arbitrary and capricious because he was not convicted of an offense of operating a motor vehicle under the influence in the original court. The fact of acquittal of a criminal charge of operating a motor vehicle while under the influence of alcoholic liquor does not have any bearing upon a proceeding before the director for the revocation of a driver's license under the provisions of law separate and distinct from criminal statutes.

As stated in Anderson v. MacDuff, *supra*, where a person who refused to submit to a blood test at the time he was arrested and charged with driving while intoxicated was acquitted upon trial of that charge, subsequent revocation of his driver's license under another law providing for licensing penalty was not precluded by the prior acquittal. The court further said that operation of a motor vehicle on the highways is a privilege and the Legislature may prescribe sanctions and conditions on which that privilege is exercised, and may even deny that privilege, once acquired, in order to prevent unsafe driving on the highways. The order of Commissioner of Motor Vehicles, revoking driver's license of petitioner because of his refusal to submit to blood test at time he was arrested for driving while intoxicated, was not arbitrary or capricious. See, also, People v. Kovacik, *supra;* Combes v. Kelly, 2 Misc. 2d 491, 152 N. Y. S. 2d 934; People v. Butts, 21 Misc. 2d 799, 201 N. Y. S. 2d 926.

Article I, section 3, of the Constitution of this state provides: "No person shall be deprived of life, liberty, or property, without due process of law."

A license to operate an automobile upon the highways of the state is a privilege and not a property right, and the power given the director to suspend such operating privilege is an administrative and not a judicial function. See Hadden v. Aitken, *supra.*

A license is a privilege and does not create property

in any legal or constitutional sense. As stated in Smith v. State, 124 Neb. 587, 247 N. W. 421: "A license to operate a motor vehicle is issued, not as a contract, but as a mere privilege, with the understanding that such license may be revoked for due cause by the proper authorities."

"A license to operate an automobile is not property, but a mere privilege, the suspension of which does not deprive the licensee of his property without due process of law." 5 Am. Jur., Automobiles, § 157, p. 593. See, also, Commonwealth v. Funk, 323 Pa. 390, 186 A. 65; Sullins v. Butler, 175 Tenn. 468, 135 S. W. 2d 930; Garford Trucking, Inc. v. Hoffman, 114 N. J. Law 522, 177 A. 882; Rawson v. Department of Licenses, 15 Wash. 2d 364, 130 P. 2d 876; Schutt v. MacDuff, 205 Misc. 43, 127 N. Y. S. 2d 116.

The plaintiff's petition fails to state a cause of action wherein he is denied due process of law.

Article I, section 12, of the Constitution of this state provides: "No person shall be compelled, in any criminal case, to give evidence against himself, * * *."

The essence of the "implied consent law" is that by driving a motor vehicle on the public highway, the operator consents to the taking of a chemical test to determine the alcoholic content of his body fluid. By the act of driving his car, he has waived his constitutional privilege of self-incrimination, which has always been considered to be a privilege of a solely personal nature which may be waived. See Schutt v. MacDuff, supra.

In United States v. Nesmith, 121 F. Supp. 758, it was held that the constitutional privilege against self-incrimination is restricted to oral testimony and does not preclude use of one's body or secretions thereof and their chemical analyses as evidence. The court said: "The Supreme Court, in an opinion by Mr. Justice Holmes, in Holt v. United States, 218 U. S. 245, 252, 31 S. Ct. 2, 6, 54 L. Ed. 1021, definitively ruled that the privilege is restricted to oral testimony and does not preclude

the use of one's body as evidence. * * * The objection was raised that this course was a violation of the provision (the privilege against self-incrimination). Mr. Justice Holmes, after referring to this objection as an extravagant extension of the Fifth Amendment, made the following comment: 'But the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material.' " See Swingle v. United States, 151 F. 2d 512. The court further said: "The law is clear, therefore, that the privilege against self-incrimination is limited to the giving of oral testimony. It does not extend to the use of the defendant's body as physical or real evidence. The conclusion is inevitable that it does not bar the use of secretions of the defendant's body and the introduction of their chemical analysis in evidence."

In State v. Smith, 47 Del. 334, 91 A. 2d 188, it was held that the sole effect of protection offered by constitutional provision that in criminal prosecution the accused shall not be compelled to give evidence against himself is to prohibit employment of legal process to extract from lips of accused an admission of his guilt which will take place of other evidence, and compulsory examinations of accused persons beyond the field of oral examination, or equivalent thereof, either before or upon their trial do not violate the privilege.

In State v. Berg, 76 Ariz. 96, 259 P. 2d 261, the court held: "Constitutional provision against compelling any person to give evidence against himself in any criminal case is directed primarily against testimonial compulsion, that is, the extraction from a person's own lips of an admission of his guilt, and privilege protects person from any disclosure sought by legal process against him as a witness, * * *." See Annotation, 25 A. L. R. 2d 1409, for cases holding similar to those cited above.

The allegation of the plaintiff that the statutes vio-

lated the self-incrimination clause of the state Constitution is a conclusion of law. In the light of the authorities heretofore cited, such an allegation is erroneous.

We conclude that the allegations of the plaintiff's petition are insufficient to constitute a cause of action against the defendants, and the trial court erred in overruling the defendants' demurrer.

We reverse the judgment and dismiss the action.

REVERSED AND DISMISSED.