[Civ. No. 8835.    Fourth Dist., Div. One.    July 25, 1968.]

WILLIS DAN FALLIS, Plaintiff and Respondent, v. DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

374

Thomas C. Lynch, Attorney General, and Michael J. Smolen, Deputy Attorney General, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

WHELAN, J.—Appeal from a judgment ordering that a peremptory writ of mandate issue commanding the Department of Motor Vehicles (DMV) to set aside its order suspending a driver's license under Vehicle Code, section 13353.

There was filed with DMV a sworn statement under section

13353 setting forth that Willis Fallis (licensee) had refused to take any of the three types of test provided for and that the other requirements of the statute had been met as the basis for an order that licensee's license be suspended for six months. Licensee requested a hearing without specifying that it be formal; an informal hearing was had on March 5, 1967, at which licensee appeared without counsel.

Except for licensee's statements hereafter set forth, the hearing officer considered only the sworn statements of the arresting officer made under section 13353, Vehicle Code, and also an ''Arrest Report'' and a ''Supplemental Arrest Report.'' The arresting officers were not present; licensee did not request their presence and did not object to the use of Officer Berube's sworn statement and arrest reports on the ground of hearsay. It is from the ''Arrest Report'' and ''Supplemental Arrest Report'' that the matters contained in the two following paragraphs are asserted by DMV to have occurred at the time of licensee's arrest.

On January 5, 1967, at 10:15 p.m., Sergeant Raper of the San Diego Police Department observed licensee driving on Mission Boulevard in San Diego. The sergeant stopped the vehicle. Officer Berube arrived on the scene and advised licensee of his Fifth and Sixth Amendment rights. When asked if he understood these rights, licensee said, ''Yes.'' When asked if he wished to talk to the officers, licensee stated, ''No, I want my attorney.''

Licensee staggered about on the sidewalk and had to be assisted in order to keep him from falling. Berube considered licensee to be drunk; asked him if he would consent to a chemical test to determine the alcoholic content of his blood; informed him of his choices and of the penalty for refusal. Licensee stated, ''I want my attorney. I won't take any test without my attorney or my doctor and 15 witnesses. I won't take any police test. I want my doctor to give me a test.'' The arrest report also stated: ''He demanded an attorney. My attempt to reach one proved futile. When in the station . . . he again refused all tests under police conditions.''

The evidence presented by licensee, as summarized by the hearing officer, is as follows:

''He acknowledged that he was arrested on January 5, 1967, at 11:30 p.m., operating a pick-up truck that he had borrowed from a friend in order to move some furniture.

''Mr. Fallis denied that the arresting officer did have reasonable cause to suspect that he had been operating a motor

vehicle while under the influence of intoxicating liquor. He based this denial on the fact that he was witnessed by others as having driven erratically, these witnesses alerted Police who subsequently arrested him although they did not actually observe him driving the vehicle. On February 20, 1967, or February 27, 1967, Mr. Fallis was convicted in San Diego Municipal Court in violation of 23103 of the Vehicle Code (reduced 23102), and was fined $100 plus $10 Court costs.

"Mr. Fallis added that he is well aware that he cannot receive any citations involving the use of alcohol as this would reflect on the liquor license he maintains in his business by the Alcoholic Beverage Control Commission.

"Mr. Fallis acknowledged that the Police did request him to submit to a blood, breath, or urine test at the arrest scene, but 'I never did refuse.'

"At the arrest scene, Mr. Fallis requested that the Police allow a civilian to witness proceedings. This request was refused by the Police although Mr. Fallis stated that his place of business was approximately only 300 feet from the scene of arrest. Simultaneously, he requested to be able to call his doctor so that the doctor could meet him at the San Diego Police Department and draw a blood sample, or chemical testing. This request was again refused by Police, Mr. Fallis said.

"Mr. Fallis refused to submit to blood sampling unless it was done by his own doctor because he has been under a doctor's care for a *high blood pressure* condition which necessitated a hospitalization of ten days approximately three months ago. He, likewise, refused to take a breath or urine test unless administered by his own doctor. Even when informed that his driving privilege would be suspended if he refused the test, he continued to refuse primarily objecting to the officer's refusal to allow him to contact his own doctor. Mr. Fallis again stated, 'I did not refuse to take the test.'

"At this point I reviewed Section 13354, Paragraph A and B, of the Vehicle Code, and Mr. Fallis replied that he was not informed of these provisions by any of the officers.

"Mr. Fallis concluded our interview by informing me that his attorney, Walter M. Milford, First National Bank Building, 530 'B' Street, San Diego, represented him in Court and, on the basis that the case was preconceived, the prosecuting attorney dropped the charges."

The referee recommended suspension of licensee's license; DMV adopted his recommendation and notified licensee that a 6-month suspension would begin on April 26, 1967.

On April 25, 1967, licensee filed a petition for writ of mandate alleging the action by DMV was invalid, in that (among other reasons):

"(a) . . . Vehicle Code 13353 et. seq. is unconstitutional in that it seeks to deprive operators of motor vehicles of their right to counsel, their privilege against self-incrimination, . . .

"(b) Respondent failed to grant petitioner a fair trial, in that whatever evidence was considered by the referee and respondent was not shown to petitioner nor were the arresting officers present so that they could be cross-examined and their testimony rebutted.

"(c) Respondent's decision is not supported by either substantial evidence or the weight of the evidence in that the only testimony at said hearing was that of petitioner to the effect that he at no time refused to take the chemical tests as provided by California Vehicle Code 13353 et. seq., but rather, that he stated to the arresting officers that he would agree to take the tests, but due to his being under the care of a medical doctor requested that he be permitted to contact his doctor and have him present at the time the test was administered. He further requested the assistance of counsel. Both of these requests were refused although the Vehicle Code section provides for the administration of the tests by the medical doctor of the arrested person."

The petition for writ of mandate was granted and a judgment entered on June 14, 1967. The findings of fact include the following:

"5. The petitioner when stopped by the officer requested the advice of counsel prior to:

"(a) *answering the question* as to whether or not he would consent to a blood, breath or urine test to determine the presence of alcohol;

"(b) determining which, if any, of the three tests he chose to take.

"6. Petitioner's said requests were denied him.

"7. By reason of his being refused counsel, petitioner refused to state whether *or not* he would consent to any of said blood tests, and if so, which.

"8. By reason thereof, petitioner did not refuse to take any of said tests."

The court's conclusion of law was:

"1. Petitioner was not obliged to make any oral statement to the officer after having requested and been denied counsel.

The right to freedom of speech includes the right to remain silent upon all subjects. There was no refusal to take a test.''

## CONTENTIONS ON APPEAL

DMV contends the court erred in granting a writ of mandate. It challenges the court's conclusion that defendant's conduct did not constitute a refusal to take a chemical test, and the implied opinion of the court that section 13353 is unconstitutional.

### CONTENTS OF ''ARREST REPORT'' AND ''SUPPLEMENTAL ARREST REPORT'' NOT PROVIDED FOR BY STATUTE MAY NOT BE CONSIDERED AS EVIDENCE TO CONTROVERT ORAL TESTIMONY.

We have concluded that the trial court ordered issuance of a writ of mandate upon untenable grounds, which are separately treated herein.

A question not decided by the order appealed from would have justified the action of the trial court, i.e. the insufficiency of the evidence before the hearing officer upon which to base a finding that the arresting officer had reasonable cause to arrest licensee for driving while under the influence of intoxicating liquor.

It is clear from the hearing officer's summary that licensee raised that issue before the hearing officer; he did not admit anywhere that he had been intoxicated or even had taken any alcoholic beverage.

Against that testimony there was in support of the hearing officer's finding the sworn statement of the arresting officer in the form of a conclusion that he had probable cause, and an ''Arrest Report'' and ''Supplemental Arrest Report'' that contain certain statements as of matters of fact.

█ The sworn statement of the arresting officer provided for by section 13353, Vehicle Code, is a sufficient basis for the summary suspension of a license if the licensee does not ask for a hearing; and in an informal hearing the statement should be and is sufficient *prima facie* evidence of any matter as to which there is no conflicting evidence. We are of opinion, however, that the statement in form of a conclusion that the arresting officer had reasonable cause is not alone sufficient to overcome evidence to the contrary.

We are of opinion, also, that neither the arrest report nor the supplemental arrest report, neither of which is provided for by the Vehicle Code, may serve as evidence as to any fact

required by section 13353, Vehicle Code, concerning which there is evidence to the contrary.[1]

On that issue, therefore, the trial court might properly have determined that the finding of the hearing officer was not supported by the evidence, and ordered a remand.

■ THE FIFTH AMENDMENT RIGHT TO REMAIN SILENT DOES NOT PROTECT A LICENSEE IN REFUSING TO STATE WHETHER HE WILL SUBMIT TO A TEST UNDER SECTION 13353, VEHICLE CODE.

■ A licensee who refuses to submit to any of the alternative types of tests provided by section 13353, if the other conditions prescribed by the section also exist, makes himself liable to the suspension of his driving privileges. The proceedings leading up to such a suspension of his driving privileges upon those grounds are civil in nature, rather than criminal. (See *State* v. *Muzzy*, 124 Vt. 222 [202 A.2d 267].)

In *People* v. *Sudduth*, 65 Cal.2d 543, 547 [55 Cal.Rptr. 393, 421 P.2d 401], the court pointed out the distinction between the verbal refusal to take a "breathalyzer test" and the refusal to answer questions that might tend to incriminate, holding that evidence of the defendant's refusal to take the test was admissible and might be the subject of comment and of a proper instruction by the court.

In other jurisdictions with statutes containing provisions similar to those of section 13353, Vehicle Code, it has been held that the requirement that a licensee state whether he will submit to a test does not violate the privilege against self-incrimination. (*Lee* v. *State*, 187 Kan. 566 [358 P.2d 765]; *Prucha* v. *Department of Motor Vehicles*, 172 Neb. 415 [110 N.W.2d 75, 88 A.L.R.2d 1055]; *Blydenburg* v. *David* (Mo.) 413 S.W.2d 284.

■ THERE IS NO FIRST AMENDMENT RIGHT TO REMAIN SILENT IN THE FACE OF A REQUEST THAT A LICENSEE SUBMIT TO A TEST.

It is far-fetched to say that the answer "No" to the question "Will you submit to a test?" has been subjected to legislative precensorship and the unpleasant consequences of

---

[1]Section 14104, Vehicle Code, provides in part that in an informal hearing, "The Department may consider any of the records or reports referred to in Section 14108."

Section 14108, Vehicle Code, provides in part that at a formal hearing the department shall consider its official records. While section 13353 provides for the sworn statement of the arresting officer, no statutory provision has been made for the filing with the department of the "arrest report" or "supplemental arrest report."

such an answer prescribed in violation of the First Amendment right of freedom of speech.

Alternatively, it may be argued that freedom of speech implies the right not to speak under compulsion: (a) not to be compelled to utter an opinion in a certain tenor, but also (b) not to be compelled to make an utterance of any kind.

The question posed by the clause lettered (b) was touched upon in *Barsky* v. *United States,* 167 F.2d 241, 249-350 [83 App.D.C. 127], cert. den. 334 U.S. 843 [92 L.Ed. 1767, 68 S.Ct. 1511], where it was observed: "It is urged by the appellee Government that freedom of speech does not encompass freedom to remain silent. There is justification for the contention that the latter is a freedom of privacy, different in characteristics and governed by different considerations from the constitutionally protected freedom of speech. At least, the basic public policies which underlie the two are different. The public policy which supports freedom of speech is that the safety of democratic government lies in open discussion— discussion of grievances, remedies, of 'noxious doctrine' as well as of popular preferences. The public interest in privacy, however, is premised upon the individual's right to the pursuit of happiness. But we do not consider that question and do not rest this decision in any respect upon it. We assume, without deciding, for purposes of this case, that compulsion to answer the question asked by the Congressional Committee would impinge upon speech and not merely invade privacy."

Other discussions of the right to remain silent as enjoying the protection of the freedom of speech clause of the First Amendment have dwelt rather upon the statement of clause (a) above. (See *West Virginia State Board of Education* v. *Barnette,* 319 U.S. 624 [87 L.Ed. 1628, 63 S.Ct. 1178, 147 A.L.R. 674]; dissenting opinion of Justice Stone in *Minersville* v. *Gobitis,* 310 U.S. 586, 604 [84 L.Ed. 1375, 1384, 60 S.Ct. 1010, 1017, 127 A.L.R. 1493].[2])

In *Goodman* v. *United States,* 108 F.2d 516 [127 A.L.R. 265], the enforcement of a requirement that a witness before the grand jury take an oath of secrecy was upheld in the face

---

[2] *West Virginia State Board of Education* v. *Barnette,* 319 U.S. 624 [87 L.Ed. 1628, 63 S.Ct. 1178, 147 A.L.R. 674], holds in part:

"[N]o official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or acts their faith therein." (P. 642 [87 L.Ed. p. 1639, 63 S.Ct. p. 1187].)

"[V]alidity of the asserted power to force an American citizen publicly to profess any statement of belief or to engage in any ceremony of assent to one presents questions of power that must be considered inde-

of the contention that the requirement of such an oath impaired the witness's right of free speech under the First Amendment. It is surmised that the claimed invasion was of the right not to communicate at all rather than of the right not to give expression to the oath.

We do not doubt that the learned trial judge in the case before us might have dealt summarily with the claim of a witness under subpoena to refuse to be sworn or make affirmation as a witness on the sole ground that he had a right to remain silent under the free speech clause of the First Amendment.

No attempt at a definition of the extent of the First Amendment right of free speech is called for; under that amendment the right to express opinion is not to be placed in a strait-jacket; nor should we attempt to place one on the possibly amorphous development of doctrine rooted in that amendment. Suffice to say that there is no unconstitutional restriction on the right of free speech in the proper enforcement of the provisions of section 13353, Vehicle Code.

### Refusal to Take Test Unless Administered by Licensee's Physician.

■ A licensee may not qualify his consent to submit to a test by a condition that the test be administered by or in the presence of his own physician.

Such a qualified consent is in fact a refusal to take the test provided by the statute. (See *King* v. *Kelly,* 9 App.Div.2d 840 [192 N.Y.S.2d 682]; *Sowa* v. *Hults,* 22 App.Div.2d 730 [253 N.Y.S.2d 294, 295-296]; *Beare* v. *Smith* (S.D.) 140 N.W.2d 603).

The right to have an *additional* test made by one's own physician is assured by the statute. (Veh. Code, § 13354.)

### The Effect of Licensee's Claim to Be Under the Care of a Physician.

■ Mere assertion by licensee that he was suffering from some malady which prevented him from submitting to a chemical test of his blood is no excuse for a refusal. (*Lee* v. *State, supra,* 187 Kan. 566 [358 P.2d 765]; *Prucha* v. *Department of*

---

pendently of any idea we may have as to the utility of the ceremony in question.'' (P. 634 [87 L.Ed. p. 1635, 63 S. Ct. p. 1183].)

The dissenting opinion in *Minersville* v. *Gobitis,* 310 U.S. 586, 604 [84 L.Ed. 1375, 1384, 60 S.Ct. 1010, 1017, 127 A.L.R. 1493] states:

''The very essence of the liberty which they guaranty is the freedom of the individual from compulsion as to what he shall think and what he shall say . . .''

*Motor Vehicles, supra,* 172 Neb. 415 [110 N.W.2d 75].)

We are of opinion that any equivocal refusal may be interpreted as a refusal. (See *Clancy* v. *Kelly,* 7 App.Div.2d 820 [180 N.Y.S.2d 923, 924].)

LICENSEE HAD NO PRIVILEGE TO REFUSE TO SAY WHETHER HE
WOULD SUBMIT TO THE TEST WITHOUT FIRST HAVING
HAD THE ADVICE OF COUNSEL.

■ The right to counsel as an absolute under the Sixth Amendment to the federal Constitution applies only in criminal proceedings. ■ The Fifth Amendment right to refuse to answer questions that might tend to incriminate without first having the advice of counsel likewise applies only to the making of statements that might be used in a criminal prosecution.

■ A constitutional basis for a right to be represented by counsel in noncriminal proceedings is found in the due process clauses of the Fifth and Fourteenth Amendments and the equal protection clause of the Fourteenth Amendment. It applies in a civil administrative hearing. (*Steen* v. *Board of Civil Service Comrs.,* 26 Cal.2d 716, 727 [160 P.2d 816].)

In its narrowest definition, it is the right to appear by counsel in any adversary proceeding in which the adversary party has the benefit of or the right to counsel.

Thus in the trial of actions in the small claims court, neither side is permitted to have counsel; although the constitutional question has been answered with the observation that the parties on appeal may have counsel; and, although a plaintiff may not appeal, he has had the choice of suing in a court where he could have counsel. (*Prudential Ins. Co.* v. *Small Claims Court,* 76 Cal.App.2d 379 [173 P.2d 38, 167 A.L.R. 820].)

■ The right to counsel as an incident to the protection of the Fifth Amendment right to remain silent does not apply to the giving of a statement that one will or will not submit to the test required by section 13353, Vehicle Code, in view of the conclusion that the making of such a statement is not a testimonial communication, and since the refusal to take the test has not been declared to be a crime or punishable as such.

, (See *Finocchairo* v. *Kelly,* 11 N.Y.2d 58 [181 N.E.2d 427, 428] cert. denied, 370 U.S. 912 [8 L.Ed.2d 405, 82 S.Ct. 1259]; *Gottschalk* v. *Sueppel,* 258 Iowa 1173 [140 N.W.2d 866, 870].)

In *Goodman* v. *United States, supra,* 108 F.2d 516, the

claim was made but rejected that the right to counsel extended to the right of a witness before a grand jury to counsel before deciding whether to take an oath of secrecy as such witness.

Neither the denial of the opportunity for advice of counsel before stating whether one will submit to a test and before deciding which test to take, nor the denial of the opportunity to have counsel present while the test is administered, is the denial of any constitutional right. (*Schmerber* v. *State of California*, 384 U.S. 757, 766 [16 L.Ed.2d 908, 917, 86 S.Ct. 1826, 1833].)

One aspect of the record requires comment. One of the arresting officers had advised licensee of his rights under the Fifth and Sixth Amendments as defined in *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].[3]

▮ It was only thereafter that the licensee was asked if he would take the test. The problem inherent in such a sequence is pointed out in *People* v. *Ellis*, 65 Cal.2d 529, 539 [55 Cal.Rptr. 385, 421 P.2d 393], where the court said: "The usual Fifth Amendment warning that a suspect has a right to remain silent creates this problem, for if taken literally it includes the right not to speak at all. After having given such a warning, if the police direct a defendant to speak for voice identification and he refuses, they must, as a prerequisite to the use of the defendant's refusal to speak as evidence of consciousness of guilt, advise him that the right to remain silent does not include the right to refuse to participate in such a test."

However, licensee in the case at bench was not loath to give responses and to make statements after the *Miranda* warning. The gist of it all was that he would not take any test unless given by his own doctor in the presence of his attorney. That clearly was a refusal to take a test under the conditions fixed by the statute. (See *Beare* v. *Smith, supra*, 140 N.W.2d 603, 607.)

There was attached to and incorporated in DMV's return to the petition for writ of mandate the hearing officer's summary of the evidence presented by licensee at the informal hearing, the correctness of which has not been controverted. The statements made by licensee at the informal hearing make

---

[3]That, however, appears only from the "Arrest Report" or "Supplemental Arrest Report."

it clear that licensee refused to take any of the three types of tests except under conditions imposed by himself.

The judgment is reversed with directions to the trial court to make new findings and to enter judgment in conformity with the views expressed herein, so that DMV may proceed with a further hearing if it elects to do so.

Brown (Gerald), P. J., and Coughlin, J., concurred.