**STATE of Maine**

v.

**Alfred H. STEVENS.**

Supreme Judicial Court of Maine.

April 9, 1969.

Clinton B. Townsend, County Atty., Elton A. Burky, Asst. County Atty., Somerset County, Skowhegan, for plaintiff.

George W. Perkins, and Wallace A. Bilodeau, Skowhegan, for defendant.

Before WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

TAPLEY, Justice.

On appeal. The factual aspects of this case are provided by an agreed statement of facts.

Alfred H. Stevens was arrested in Anson, Maine on February 12, 1968 for operating a motor vehicle while under the influence of intoxicating liquor. At the 1968 May Term of the Superior Court, within and for the County of Somerset, he was tried before a jury and was found guilty of the offense. Following his arrest he was later taken to the Sheriff's Office at Skowhegan, Maine where he was read the "Miranda Warning." This warning was in the nature of advising him as to his constitutional rights, viz: his right to counsel, his right to remain silent and that anything he may say could be used against him in a court of law, and that if he was

indigent and could not afford the services of counsel one would be appointed for him. Following this advice to him of his constitutional rights Mr. Stevens said he wanted to talk to a lawyer and he was given the opportunity to contact one. The attempt to communicate with the lawyer was unsuccessful. The following conversation took place between Mr. Price, the arresting officer, and Mr. Stevens after Mr. Stevens was unable to contact counsel:

"Q. And after this attempt to make a phone call, Mr. Price, was there some more conversation between you and Mr. Stevens?

A. Yes, there was.

Q. And what was that conversation?

A. I asked Mr. Stevens if he would like to have a blood test.

Q. And did he make any reply?

A. He said, 'Yes.'

Q. And was there other conversation at that time relating to the blood test?

A. Yes, I told him that the blood test could help him and the blood test was for his benefit as well as ours.

Q. In other words, that it could help you or could help him, is that correct?

A. Yes.

Q. Mr. Price, after this conversation, did you go some place with Mr. Stevens?

A. Yes, I did.

THE COURT: I don't believe it's in evidence what reply, if any, the defendant made.

MR. TOWNSEND: I'm sorry, I understood him to say Mr. Stevens had said, 'Yes,' but perhaps I am incorrect.

BY MR. TOWNSEND:

Q. What reply did Mr. Stevens make to your suggestion about the blood test?

A. He said, 'Yes.'

Q. And did you then go some place with Mr. Stevens?

A. Yes.

Q. Where did you go?

A. Went to Water Street to Dr. Hornstein's office.

Prior testimony in the record indicates that Mr. Stevens had been placed under arrest at Anson, Maine, and the foregoing took place sometime later at the Sheriff's office in Skowhegan, Maine."

The results of the blood test by chemical analysis showed alcoholic content by weight of $^{25}/_{100}\%$ and this evidence was admitted over the objection of the defendant. The defendant objected to the admission of the results of the blood test on the grounds "that the taking of blood under these circumstances amounted to a denial to the defendant of his constitutional rights and that it is admission of prejudicial error." It is agreed that the blood test constituted a significant and substantial portion of the State's evidence bearing upon the question of the condition of the defendant at the time of his arrest.

The defendant contends that when the blood was extracted from his person and the result of the chemical analysis of it was used as evidence in the prosecution of the charge against him, the act constituted a violation of his privilege against self incrimination as guaranteed to him under the Fifth Amendment to the Constitution of the United States. He further contends that extracting the blood from him for the purpose of analysis without first allowing him to obtain counsel to advise him of his statutory right in the premises constituted a violation of his constitutional rights under the Sixth Amendment of the Constitution of the United States.

The holdings in Schmerber v. California, 384 U.S. 757, 761, 764, 86 S.Ct. 1826, 1830, 1832, 16 L.Ed.2d 908 (1966) are persuasive in our opinion that the defendant's contention of violation of constitutional rights under the Fifth and Sixth Amendments to the Constitution is without merit.

"We therefore must now decide whether the withdrawal of the blood and admission in evidence of the analysis involved in this case violated petitioner's privilege. We hold that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends.

\* \* \* \* \* \*

"On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

Schmerber also speaks of right of counsel. In dealing with this question the Court said, on pages 765 and 766, 86 S.Ct. at page 1833:

"This conclusion also answers petitioner's claim that, in compelling him to submit to the test in face of the fact that his objection was made on the advice of counsel, he was denied his Sixth Amendment right to the assistance of counsel. Since petitioner was not entitled to assert the privilege, he has no greater right because counsel erroneously advised him that he could assert it. His claim is strictly limited to the failure of the police to respect his wish, reinforced by counsel's advice, to be left inviolate. No issue of counsel's ability to assist petitioner in respect of any rights he did possess is presented. The limited claim thus made must be rejected."

The statute prohibiting the operation of a motor vehicle when the operator is under the influence of intoxicating liquor (29 M.R.S.A. Sec. 1312) provides in part: "The failure of a person accused of this offense to have tests made to determine the weight of alcohol in his blood shall not be admissible in evidence against him."

"The statute does not expressly state that a blood analysis, to be admissible, must be of blood extracted with consent of the defendant. However, there are strong and compelling statutory implications that consent is required. Under the statute the defendant has a choice (1) he may refuse a blood test, and this refusal is not to be used against him; or (2) he may desire to have the test made." State v. Merrow, 161 Me. 111, 114, 208 A.2d 659, 660.

"The statute itself establishes no rights as to the making of tests and imposes no obligations on the part of either arresting officers or respondent." State v. Munsey, 152 Me. 198, 200, 127 A.2d 79, 81.

In State v. Bliss, 238 A.2d 848 (Del.) the defendant contended his rights under the Fourth, Fifth and Sixth Amendments to the Federal Constitution were violated. As a result of the admission at his trial of coordination and breathalyzer tests, the Court said, 238 A.2d on page 851:

"After having been told that he need not take any tests, he nevertheless performed them upon request without offering any objection; in short, he consented and thereby waived his privilege."

In Maine the blood test may not be taken except by consent of the accused

and if he refuses that fact cannot be used against him at his trial. In the instant case the defendant was asked by the officer if he would like to have a blood test. He was told that the result of it could be of assistance to him or benefit the State in its prosecution. He answered in the affirmative, whereupon the defendant and the arresting officer went to the doctor's office where the blood was extracted from the defendant. There were no threats, no compulsion, no duress and no promises; in brief, there were no influences exerted on the defendant by the officer to obtain the consent. Before consenting, the defendant was advised by the arresting officer of the fact that the results of the test could be used against him. With this information and knowledge he freely and voluntarily consented.

There is nothing in the record showing or indicating that the defendant, at the trial, challenged the admission of the result of the blood test because of non-consent. The objection is based entirely on alleged constitutional deprivation, of which we find there is none.

The entry will be,

Appeal denied.

Judgment for the State.

WILLIAMSON, C. J., did not sit.