**OPINION OF THE JUSTICES of the Supreme Judicial Court given Under the Provisions of Section 3 of Article VI of the Constitution.**

Questions Propounded by the House in an Order Dated May 19, 1969, Answered May 26, 1969.

Supreme Judicial Court of Maine.

May 26, 1969.

---

### HOUSE ORDER PROPOUNDING QUESTIONS

### STATE OF MAINE
### HOUSE OF REPRESENTATIVES ·
### 104th LEGISLATURE

WHEREAS, it appears to the House of Representatives of the 104th Legislature that the following are important questions of law, and that the occasion is a solemn one; and

WHEREAS, the question of the drunken driver has long presented a serious problem to law enforcement agencies in this jurisdiction and affects the safety of our highways and the protection of the lives of persons lawfully upon said highways, all of which affect the public peace, health and safety of the inhabitants of this State and requires immediate legislative action; and

WHEREAS, there is pending before the 104th Legislature legislative document #1339 entitled An Act Providing for Implied Consent Law for Operators of Motor Vehicles; and

WHEREAS, the constitutionality of L.D. #1339 has been questioned in the legislative debate on the grounds of self-incrimination; due process and lawful search and seizure, and questions have been raised as to its interpretation; and

WHEREAS, it is important that the Legislature be informed as to the constitutionality and interpretation of legislative document #1339:

NOW, THEREFORE, BE IT ORDERED that the Justices of the Supreme Judicial Court are hereby respectfully requested to give to the House of Representatives, according to the provisions of the Constitution, on its behalf, their opinion on the following questions:

1. May the State properly, by the enactment of legislative document #1339, suspend a persons license and privilege to operate, when the licensee, upon being legally arrested on the charge of operating or attempting to operate a motor vehicle while intoxicated or while his mental and physical faculties are impaired by the use of intoxicating liquor, refuses to submit to one of the test enumerated in the bill for the purpose of determining the alcoholic content of his blood, when requested to do so by a law enforcement officer, whether or not the person is subsequently convicted of the offense charged?

2. Assuming that a person is legally arrested and has legally consented to the taking of a test, do the provisions of legislative document #1339 relating to the taking of chemical tests of breath, blood or urine violate the provisions relating to self-incrimination under the Fifth Amendment

of the Constitution of the United States or under the provisions of the Constitution of Maine, Article I, Section 6?

3. Assuming that a person is legally arrested and has legally consented to the taking of a test, do the provisions of L.D. #1339 relating to the taking of chemical tests of breath, blood or urine violate the provisions relating to due process contained in the Fourteenth Amendment of the Constitution of the United States and in the Constitution of Maine, Article I, Section 6-A?

4. Assuming that a person is legally arrested and has legally consented to the taking of a test, do the provisions of L.D. #1339 relating to the taking of chemical tests of breath, blood or urine violate the provisions relating to unlawful searches and seizures contained in the Fourth Amendment of the Constitution of the United States and in the Constitution of Maine, Article I, Section 5?

5. If legislative document #1339 is enacted and a person is legally arrested under its provisions and is advised of the tests available to him and requests a test not available but refuses to take any other test, is his license and privilege to operate susceptible of suspension by the Secretary of State under the provisions of subsection 2 of section 1312 of L.D. #1339?

Name: Birt

Town: East Millinocket

## ONE HUNDRED AND FOURTH LEGISLATURE

*Legislative Document*          *No.1339.*

H. P. 1030          House of Representatives, March 12, 1969

Referred to Committee on Judiciary. Sent up for concurrence and 1,000 ordered printed.

BERTHA W. JOHNSON, Clerk

Presented by Mr. Birt of East Millinocket.

STATE OF MAINE

IN THE YEAR OF OUR LORD NINETEEN HUNDRED SIXTY-NINE

AN ACT Providing for Implied Consent Law for Operators of Motor Vehicles.

Be it enacted by the People of the State of Maine, as follows:

Sec. I. R.S., T. 29, § 1312, repealed and replaced. Section 1312 of Title 29 of the Revised Statutes, as amended, is repealed and the following enacted in place thereof:

§ 1312. Implied consent to chemical tests; operation while intoxicated or impaired; penalties

Any person who operates a motor vehicle or attempts to operate a motor vehicle within this State shall be deemed to have given consent to a chemical test of the blood alcohol level of his blood, breath or urine for the purpose of determining the alcoholic content of his blood, if arrested for operating or attempting to operate a motor vehicle while intoxicated by the use of intoxicating liquor or drugs or while his mental or physical faculties are impaired by the use of intoxicating liquor or drugs. He shall be informed by a law enforcement officer of the tests available to him, and said accused shall select and designate one of the tests. The person tested shall be permitted to have a physician of his own choosing and at his own expense administer a chemical test of the blood alcohol level of his breath, blood or urine in addition to the test administered at the direction of the law enforcement officer.

1. Prerequisites to tests. Before any test specified is given, the law enforcement officer shall inform the arrested person of his right to have a similar test or tests made by a physician of his own choosing, afford him an opportunity to request such additional test and inform him of the consequences of his refusal to permit a test at

the direction of the law enforcement officer. If the law enforcement officer fails to comply with this section, the test shall be inadmissible as evidence in any proceeding before any administrative officer or court of this State.

2. Hearing. If a person under arrest refuses upon the request of a law enforcement officer to submit to one of the tests as provided in this section, none shall be given. The Secretary of State, upon the receipt of a report of the arrest for operating or attempting to operate a motor vehicle within this State while his mental or physical faculties are impaired by the use of intoxicating liquor or drugs or while intoxicated by the use of intoxicating liquor or drugs and that the person had refused to submit to one of the tests shall immediately notify the person in writing to appear for a hearing. A hearing shall be held in the same manner and under the same conditions as provided in section 2241. The scope of such a hearing shall cover the issues of whether the person was placed under arrest and whether he refused to submit to one of the tests upon the request of a law enforcement officer. If it is determined that such person was arrested and did refuse to take a chemical test of his blood, breath or urine, the Secretary of State shall order a suspension of the person's license and privilege to operate, not to exceed 6 months.

3. Review. The person, whose license and privilege to operate is suspended under subsection 2, shall have the right to file a petition in the Superior Court in the county where he resides or in Kennebec County to review the final order of suspension by the Secretary of State in the same manner and under the same conditions as is provided in section 2242. Pending final decision on appeal, the license or permit to operate shall not be suspended.

4. Notification to nonresident's state. When it has been finally determined under the procedures of this section that a nonresident's privilege to operate a motor vehicle in this State has been suspended, the Secretary of State shall give information in writing of the action taken to the motor vehicle administrator of the state of the person's residence and of any state in which he has a license.

5. Results of tests. Upon the request of the person who was tested, the results of such test shall be given to him as soon as available.

6. Blood-alcohol level.

A. If there was at the time alleged, 0.05% or less by weight of alcohol in the defendant's blood, it is prima facie evidence that the defendant's mental or physical faculties were not impaired by the use of intoxicating liquor or drugs; nor was he intoxicated by the use of intoxicating liquors or drugs, within the meaning of this section.

B. If there was at the time alleged in excess of 0.05%, but less than 0.10% by weight of alcohol in the defendant's blood, it is relevant evidence, but it is not to be given prima facie effect in indicating whether or not the defendant's mental or physical faculties were impaired by the use of intoxicating liquor or drugs within the meaning of this section, but such fact may be considered with other competent evidence in determining whether the mental or physical faculties of the defendant were impaired; and such fact is prima facie evidence that the defendant was not intoxicated by the use of intoxicating liquor or drugs within the meaning of this section.

C. If there was at the time alleged 0.10% or more, but less than 0.15% by weight of alcohol in the defendant's blood, it is prima facie evidence that the defendant's mental or physical faculties were impaired by the use of intoxicating liquor or drugs within the meaning of this section, and such fact is prima facie evidence that the defendant was not intoxicated by the use of intoxicating liquor or drugs within the meaning of this section.

D. Evidence that there was, at the time alleged, 0.15% or more, by weight of alcohol in the defendant's blood is prima facie evidence that the defendant was intoxicated by the use of intoxicating liquor or drugs within the meaning of this section.

7. Administration of tests. Persons administering and conducting chemical tests of blood, breath or urine shall be certified for this purpose by the Department of Health and Welfare under certification standards to be set by that department's rules and regulations. A duty licensed physician or registered nurse, acting at the request of a law enforcement officer with the consent of the defendant, may collect specimens of blood only for the purpose of determining the alcohol content therein.

8. Plea of guilty to operating or attempting to operate a motor vehicle while impaired. No person charged with operating or attempting to operate while intoxicated may plead guilty to the lesser offense of operating or attempting to operate while impaired unless he has submitted to one, or more, of the foregoing chemical tests and the results thereof were less than 0.15% by weight of alcohol in the defendant's blood at the time of the alleged offense.

9. Evidence. The court shall admit evidence of the percentage by weight of alcohol in the defendant's blood at the time alleged, as shown by a chemical analysis of his breath, blood or urine.

10. Payment of tests. All such tests conducted by direction of a law enforcement officer made to determine the weight of alcohol in the blood shall be paid for from the General Fund.

11. Penalties.

A. Whoever shall operate or attempt to operate a motor vehicle within this State while his mental or physical faculties are impaired by the use of intoxicating liquor or drugs, upon conviction, shall be punished by a fine of not more than $300 or by imprisonment for not more than 90 days, or by both.

The license and privilege to operate motor vehicles of any person convicted of violating this paragraph for the first time shall be suspended for 3 months upon receipt of an attested copy of the court record, without further hearing. If any person found guilty of violation of this paragraph shall appeal from the judgment and sentence of the trial court, his license and privilege to operate a motor vehicle in this State shall be suspended during the time an appeal is pending, unless the trial court shall otherwise order, or unless the Secretary of State, after a hearing, shall restore the license and privilege pending decision on the appeal; providing that in all cases of first finding of guilt under this paragraph the license and privilege to operate a motor vehicle shall not be suspended during the time an immediately by the Secretary of State appeal is pending.

Any person convicted of a 2nd violation of this paragraph shall have his license and privilege to operate a motor vehicle in this State suspended in the manner provided for a period of one year, provided that after the expiration of 6 months from the date of such suspension, he may petition the Secretary of State for a license or permit and the Secretary of State, after hearing and after his determination that public safety will not be endangered by issuing a new license, may issue such license or permit, with or without conditions thereto attached.

Any person convicted of a 3rd or subsequent violation of this paragraph shall not be licensed again or permitted to operate a motor vehicle in this State for 2 years from the date of suspension, except that one year from the date of such suspension, he may petition the Secretary of State for a restoration of his license or permit and after hearing the Secretary of State may issue a license or permit to the petitioner, with or without conditions

and restrictions and under such terms as he may deem equitable, having in mind the safety of the public and the welfare of the petitioner and his immediate dependents.

B.   Whoever shall operate or attempt to operate a motor vehicle within this State while intoxicated by the use of intoxicating liquor or drugs, upon conviction, shall be punished by a fine of not less than $150 nor more than $500, or by imprisonment for not more than 6 months, or by both. Any person convicted of a 2nd or subsequent offense shall be punished by a fine of not less than $200 nor more than $1,000 or by imprisonment for not more than II months, or by both.

The license and privilege to operate motor vehicles of any person found guilty of violating this paragraph shall be suspended immediately by the Secretary of State upon receipt of an attested copy of the court records, without further hearing.

If any person found guilty of violation of this paragraph shall appeal from the judgment and sentence of the trial court, his license and privilege to operate a motor vehicle in this State shall be suspended during the time an appeal is pending, unless the trial court shall otherwise order, or unless the Secretary of State, after a hearing, shall restore the license and privilege pending decision on the appeal; provided that in all cases of first finding of guilt under this paragraph the license and privilege to operate a motor vehicle shall not be suspended during the time an appeal is pending.

No person whose license and privilege to operate a motor vehicle has been suspended upon first conviction of violating this paragraph shall be licensed again or permitted to operate a motor vehicle for one year, except that, after the expiration of 6 months from the date of such suspension, he may petition the Secretary of State for a license or permit, who, after hearing and after his determination that

public safety will not be endangered by issuing a new license, may issue such license or permit, with or without conditions thereto attached.

Upon a 2nd conviction of a violation of this paragraph, such person shall not be licensed again or permitted to operate a motor vehicle in this State for 2 years from the date of suspension, except that after 15 months from the date of such suspension, he may petition the Secretary of State for a license or permit and the Secretary of State, after hearing and determination, may issue a license or permit to the petitioner, with such conditions as he shall deem necessary to protect the public safety.

Upon a 3rd conviction of a violation of this paragraph, such person shall not be licensed again or permitted to operate a motor vehicle in this State for 5 years from the date of suspension, except that after 3 years from the date of such last suspension, he may petition the Secretary of State for a license or permit, and the Secretary of State (after hearing, may issue a license or permit with such conditions attached as he shall deem necessary to protect the public safety.

Upon any subsequent conviction of a violation of this paragraph, the license or permit shall terminate and no subsequent license or permit shall be granted to such person, except that a person who has had 4 convictions under this paragraph may petition the Secretary of State for a special license and the Secretary of State, after being satisfied beyond a reasonable doubt that the said petitioner has refrained from all use of intoxicating liquor for a period of 5 years next preceding the day of hearing on said petition, may issue a special permit or license conditioned upon continued nonuse of intoxicating liquor and such other conditions as he may deem proper.

C.   In allegations charging 2nd or subsequent offenses under either paragraphs A or B, a certified copy of the records of

prior convictions from the office of the Secretary of State shall be admitted in evidence as proof of the prior conviction or convictions.

Sec. 2. R.S., T. 29, § 1312–A, repealed. Section 1312–A of Title 29 of the Revised Statutes, as enacted by chapter 546 of the public laws of 1967, is repealed.

## ANSWERS OF THE JUSTICES

## TO THE HONORABLE HOUSE OF REPRESENTATIVES OF THE STATE OF MAINE:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answers to the questions propounded on May 19, 1969.

■ QUESTION NO. 1: May the State properly, by the enactment of legislative document #1339, suspend a person's license and privilege to operate, when the licensee, upon being legally arrested on the charge of operating or attempting to operate a motor vehicle while intoxicated or while his mental and physical faculties are impaired by the use of intoxicating liquor, refuses to submit to one of the tests enumerated in the bill for the purpose of determining the alcoholic content of his blood, when requested to do so by a law enforcement officer, whether or not the person is subsequently convicted of the offense charged?

ANSWER: We answer in the affirmative.

■■ The proposed statute in effect imposes a condition upon the holding of a license to operate a motor vehicle upon the public ways of this State. The condition is that the licensee voluntarily consent to taking a sobriety test under certain prescribed conditions. The statutory requirement rests upon the premise that there is no absolute right to obtain and hold an operator's license. There is rather a privilege which for valid reasons involving the public safety may be granted or withheld by the State. Prucha v. Department of Motor Vehicles (1961), 172 Neb. 415, 110 N.W.2d 75, 88 A.L.R.2d 1055; Lee v. State (1961), 187 Kan. 566, 358 P.2d 765; and see Annot. 88 A.L.R.2d 1064. It is true that the State may not unreasonably, arbitrarily or capriciously withhold a license but it may properly condition the grant upon compliance with reasonable police power requirements.

We note that the proposed amendment to 29 M.R.S.A. Sec. 1312 uses the words "arrested" and "arrest" and clearly contemplates that the implied consent to the taking of a test becomes operative in a given case only after an arrest has been made for operating or attempting to operate while intoxicated or impaired. We further note that in the question propounded to us the words "upon being legally arrested" are used. In answering in the affirmative, we interpret the words "arrested" and "arrest" in the proposed legislation as meaning "legally arrested" and "legal arrest." Such assigned meaning is consistent with the manifest intent and purpose of the Act.

■ The constitutional issues are covered by our answers to Questions 2, 3 and 4. The meaning which we assign to the phrase "tests available to him" as used in the Act is fully covered by our answer to Question 5. There remains for consideration only the question of the effect of a subsequent acquittal of one who has declined to submit to the test. As was stated in *Prucha*, supra, "The fact of acquittal of a criminal charge of operating a motor vehicle while under the influence of alcoholic liquor does not have any bearing upon a proceeding before the director for the revocation of a driver's license under the provisions of law separate and distinct from criminal statutes." We are not aware of any contrary authority. See cases assembled in Annot. 88 A.L.R.2d 1064, 1076, Sec. 8.

■ The proposed law provides adequate safeguards upon the revocation issue by requiring a hearing thereon and permitting Court review of an adverse ruling.

■ QUESTION NO. 2: Assuming that a person is legally arrested and has legally consented to the taking of a test, do the provisions of legislative document #1339 relating to the taking of chemical tests of breath, blood or urine violate the provisions relating to self-incrimination under the Fifth Amendment of the Constitution of the United States or under the provisions of the Constitution of Maine, Article I, Section 6?

ANSWER: We answer in the negative.

Both Article I, Section 6 of the Maine Constitution and the Fifth Amendment of the United States Constitution protect a person against self-incrimination. The wording in the State and Federal Constitutions is not identical, but in Gendron v. Burnham, 146 Me. 387, 395, 82 A.2d 773, 780, 38 A.L.R.2d 210 it was declared "that precedent with respect to the construction of the one may well serve as precedent for the construction of the other."

While the rule is not without exception "(t)he more general view is that the constitutional guaranty renders incompetent only such evidence as is furnished or produced by accused under 'testimonial compulsion,' * * *, and it has no relation whatever to real as distinguished from testimonial evidence." 22A C.J.S. Criminal Law § 649. To same effect 21 Am.Jur.2d Criminal Law § 354.

This constitutional question as applied to a blood alcohol test reached the Supreme Court of the United States in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), wherein it was held that the privilege against self-incrimination was not violated by the admission in evidence of the results of a test of a blood specimen from one under arrest.

*Schmerber* and cases from many other jurisdictions hold that the taking of samples of body fluids, or breath, for the purpose of testing for blood alcohol from a person under lawful arrest does not violate the constitutional prohibition against self-incrimation.

The legislature is mindful that Maine law is more protective of the individual than *Schmerber* by reason of the holding in State v. Merrow, 161 Me. 111, 208 A.2d 659, that the consent of the accused is necessary before a blood sample may be extracted.

Maine has recognized the *Schmerber* holding in State v. Stevens, Me., 252 A.2d 58, by opinion filed April 9, 1969.

■ QUESTION NO. 3: Assuming that a person is legally arrested and has legally consented to the taking of a test, do the provisions of L.D. #1339 relating to the taking of chemical tests of breath, blood or urine violate the provisions relating to due process contained in the Fourteenth Amendment of the Constitution of the United States and in the Constitution of Maine, Article I, Section 6-A?

ANSWER: We answer in the negative.

The Fourteenth Amendment of the United States Constitution and Article I, Section 6-A of the Maine Constitution guarantees that no person shall be deprived of life, liberty or property without due process of law.

This constitutional question was raised in Breithaupt v. Abram, 58 N.M. 385, 271 P.2d 827 (1954) which held that there was no denial of due process and the holding was affirmed by the United States Supreme Court in 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957).

■ QUESTION NO. 4: Assuming that a person is legally arrested and has legally consented to the taking of a test, do the provisions of L.D. #1339 relating to the taking of chemical tests of breath, blood or urine violate the provisions relating to unlawful searches and seizures contained in the Fourth Amendment of the Constitution

of the United States and in the Constitution of Maine, Article I, Section 5?

ANSWER: We answer in the negative.

The Fourth Amendment of the United States Constitution and Article I, Section 5 of the Maine Constitution renders people secure in their persons from all unreasonable searches and seizures.

This constitutional question was raised also in *Schmerber* wherein it was held that in the light of the fact that the percentage of alcohol in the blood decreases with the passage of time as the body functions to eliminate it from the system, and delay which would be occasioned by securing a search warrant threatened the destruction of the evidence, the taking of a blood sample in accordance with acceptable medical practices and in a reasonable manner was an appropriate incident to the arrest of the accused. See also State v. Stevens, Me., 252 A.2d 58, cited under Question No. 2.

■ QUESTION NO. 5: If legislative document #1339 is enacted and a person is legally arrested under its provisions and is advised of the tests available to him and requests a test not available but refuses to take any other test, is his license and privilege to operate susceptible of suspension by the Secretary of State under the provisions of subsection 2 of section 1312 of L.D. #1339?

ANSWER: We answer in the affirmative.

Legislative document #1339 provides that if a person legally arrested under its provisions and advised by a law enforcement officer of the "tests available to him" thereafter refuses upon request of the officer to submit to "one of the tests as provided in this section," his license and privilege to operate is susceptible of suspension for a period not to exceed 6 months.

The pertinent parts to be construed in relation to Question 5 are as follows:

"§ 1312. Any person who operates a motor vehicle or attempts to operate a motor vehicle within this State shall be deemed to have given consent to a chemical test of the blood alcohol level of his blood, breath or urine for the purpose of determining the alcoholic content of his blood, * * *. He shall be informed by a law enforcement officer of the tests available to him, and said accused shall select and designate one of the tests. * * *"

* * * * * *

"2. Hearing. If a person under arrest refuses upon the request of a law enforcement officer to submit to one of the tests as provided in this section, none shall be given. * * * If it is determined that such person was arrested and did refuse to take a chemical test of his blood, breath or urine, the Secretary of State shall order a suspension of the person's license and privilege to operate, not to exceed 6 months."

■ Webster's New International Dictionary defines available: "Such as one may avail one's self of; capable of being used to accomplish a purpose; usable; convertible into a resource." Bouvier's designates the following meaning to it: "Capable of being used; valid or advantageous." In ascertaining and carrying out the legislative intent, which is the fundamental rule of statutory construction, the court will look to the language used and also consider the object to be accomplished by the legislation, since it is the spirit of the law which must control over the literal purport of dictionary definitions. Some flexibility is essential in the proper interpretation of statutes. Acheson et al. v. Johnson, 1952, 147 Me. 275, 86 A.2d 628. Legislative expression must be read in the light of the lawmakers' purpose as the object the statute designs to accomplish oftentimes furnishes the right key to the true meaning of any statutory clause or provision. Middleton's Case, 1939, 136 Me. 108, 3 A.2d 434.

The general purpose of legislative document #1339 is to promote an effective enforcement of the law prohibiting the operation of motor vehicles in this State by per-

sons intoxicated or impaired by the use of intoxicating liquor. To interpret the statute as giving the person arrested the unqualified choice of designating any one of the 3 tests available under the law, i. e., blood, breath or urine tests, for the purpose of determining the alcoholic content of his blood without regard to the availability in fact of some one or more of the permissible tests at the time and place of the arrest would make the provisions of the statute worthless and totally ineffective in many areas of the State where in all probability all 3 tests would not be actually available. Any knowledgeable person could evade the act by designating a test unavailable as a matter of fact.

We do not impute such an intent to the Legislature and we interpret the phraseology "tests available to him" as meaning any one or more of the 3 permissible statutory tests as are reasonably available and capable of being used under all the circumstances existing at the time and place of the arrest and warning, the practical considerations of time, area, distance, facilities, equipment, and test-administration personnel to bear upon the reasonable-availability formula adopted by the lawmakers. On the other hand, the legislation does not limit the tests available to the uncontrolled whim of law enforcement officers.

Therefore, the request of a test not reasonably available for use under all the existing circumstances and his refusal to take any other test by the person arrested will subject his license and privilege to operate to suspension by the Secretary of State under the provisions of subsection 2 of section 1312 of L.D. #1339.

Dated at Augusta, Maine, this 26th day of May, 1969.

Respectfully submitted:

ROBERT B. WILLIAMSON
DONALD W. WEBBER
WALTER M. TAPLEY, Jr.
HAROLD C. MARDEN
ARMAND A. DuFRESNE, Jr.
RANDOLPH A. WEATHERBEE