[Civ. No. 25255. First Dist., Div. Two. Sept. 24, 1968.]

ELIZABETH ENT, Plaintiff and Respondent, v. DEPART-
MENT OF MOTOR VEHICLES, Defendant and Appel-
lant.

Thomas C. Lynch, Attorney General, and Victor D. Sonen-
berg, Deputy Attorney General, for Defendant and Appellant.

Elizabeth Ent, in pro. per., for Plaintiff and Respondent.

AGEE, J.—The Department of Motor Vehicles (''Depart-
ment'') appeals from the judgment of the superior court

granting a writ of mandate which ordered the Department to set aside its decision suspending the driving privileges of plaintiff (respondent) for a period of six months. Respondent is a practicing attorney and represents herself on this appeal.

These proceedings were initiated upon the Department's receipt of the sworn statement of Police Officer Nofziger that, having reasonable cause to do so, he had arrested respondent in Burlingame on January 29, 1967, at 12:27 a.m., for driving while under the influence of intoxicating liquor (Veh. Code, § 23102) and that she had refused his request to submit to a chemical test of her blood, breath or urine to determine the alcoholic content of her blood, as required by Vehicle Code section 13353.

This section applies to any lawfully arrested person who a peace officer has reasonable cause to believe is driving a motor vehicle upon a highway while under the influence of intoxicating liquor. It provides that such person shall be deemed to have given his consent to a chemical test of his blood, breath or urine and that he may choose which type of test shall be given. The section further provides that the person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months.

Respondent makes no contention that the procedure prescribed by section 13353 was not followed by the arresting officer.

After the Department had suspended respondent's operator's license. she demanded a formal hearing as provided for by section 13353, subdivision (c). (See Veh. Code § 14107 et seq.) This hearing resulted in affirmance of the original order of suspension. Respondent then filed a petition in the superior court for a writ of mandate, which was granted, as stated above.

The sworn statement of the arresting officer, which was made a part of the record without objection, states that: "The defendant [respondent] was read the above statement[1] and when questioned as to which chemical test she would take, her reply was, 'I refuse to take any test without my attorney present.' "

Respondent makes no contention that Officer Nofziger did

---

[1]This statement is as follows: "You are requested to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath or urine. A refusal will result in the suspension of your driving privilege for a period of six (6) months."

not have reasonable cause to believe that she had been driving while under the influence of intoxicating liquor. The counsel who represented her at the hearing stated, with respect to the officer's reasons for such belief, as set forth in his sworn statement: "We do not at this time propose to make an issue as to their truth or falsity."

In any event, there is no evidence in the record to refute the officer's description of respondent's erratic driving, alcoholic breath, and staggering after getting out of her car.

Respondent testified at the hearing that, when asked by the arresting officer to take the test, she replied that she "desired Counsel with me" and that that was the only condition imposed by her. This condition was never withdrawn and no test was ever taken.

Respondent makes no criticism of the findings of fact or conclusions of law made by the superior court. These include the following finding: "At the time of said arrest, said [arresting] officer requested petitioner [respondent] to submit to a chemical test of her blood, breath or urine to determine her blood alcohol content, . . . The petitioner did not refuse to take the test but, in essence, asked only that the taking thereof be delayed until her attorney was present."

 In its conclusions of law, the trial court stated that the respondent's reply to the officer's request "amounted only to a request to delay the taking of such test until she could consult with counsel and did not constitute a refusal under California Vehicle Code section 13353 to take a chemical test to determine the alcoholic content of her blood." We do not agree.

In *Finley* v. *Orr* (June, 1968) 262 Cal.App.2d 656 [69 Cal.Rptr. 137] (hearing denied by the Supreme Court), the licensee contended that "he was denied his right to have counsel present when he was called upon, while in custody of the police, to decide whether he would submit, or refuse to submit, to one of the tests." (P. 663.)

Finley testified at the formal hearing that when he was asked by the police officers, at the time of his arrest, to take a breathalyzer test, he said "he would take it if they would get his attorney" and that the second time they asked him to take the test, he said he "would take it if his attorney was there, or if they would 'call a doctor.'" (Fn. 1.)

Finley asserted that he thus "conditionally consented" and that this was a sufficient compliance with the statute.

The court pointed out that in *People* v. *Sudduth* (1966) 65

Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401], it was held that "Suspects have no constitutional right to refuse a test designed to produce physical evidence in the form of a breath sample [citations] *whether or not counsel is present* [citation]." (Italics added.)

The court in *Finley* then continued: "In civil proceedings concerning the suspension of a person's driving privilege, it has been held, in other states which have implied consent laws similar to section 13353 of the California Vehicle Code, that such person does not have a right to counsel when he is requested to submit to a required test. [Citations.] . . . *There is no merit to appellant's contention regarding the absence of counsel when he was called upon to decide whether to take the test.*" (Italics added.)

The effect of a "qualified consent" was discussed in *Fallis* v. *Department of Motor Vehicles* (July 1968) 264 Cal.App.2d 441 [70 Cal.Rptr. 595]. There it was held: "A licensee may not qualify his consent to submit to a test [under § 13353] by a condition that the test be administered by or in the presence of his own physician. Such a *qualified consent* is in fact a *refusal* to take the test provided by the statute." (Italics added.)

The court added: "Neither the denial of the opportunity for advice of counsel before stating whether one will submit to a test and before *deciding which test to take,* nor the denial of the opportunity to have counsel present while the test is administered, is the denial of any constitutional right." (Citing *Schmerber* v. *California,* 384 U.S. 757, 766 [16 L.Ed.2d 908, 917, 86 S.Ct. 1826] ; italics added.)

The foregoing language would seem determinative of respondent's contention that she needed and was entitled to the advice of counsel in *choosing* which of the three tests to take. Also, the language in the case next cited below contemplates a plurality of tests when referring to the "variables in techniques."

In *United States* v. *Wade* (1967) 388 U.S. 218, 227-228 [18 L.Ed.2d 1149, 1157-1158, 87 S.Ct. 1926], the United States Supreme Court stated: ". . . systematized or scientific analyzing of the accused's fingerprints, *blood sample,* clothing, hair, and the like . . . [involve] differences which preclude such stages being characterized as critical stages at which the accused has the right to the presence of his counsel. Knowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation

of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts. *The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment*; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial." (Italics added; see also *Gilbert* v. *California* (1967) 388 U.S. 263, 267 [18 L.Ed.2d 1178, 1183, 87 S.Ct. 1951].)

In *People* v. *Bellah* (1965) 237 Cal.App.2d 122, 127 [46 Cal.Rptr. 598], decided before the enactment of section 13353, the court said that a suspect, in deciding whether to take a field sobriety test, "was scarcely in need of legal advice in reaching that decision."

With respect to the delay in taking the test which would result from compliance with the condition imposed by respondent, the Department cites the well-established rule that the probative value of a chemical test for intoxication diminishes with the passage of time. (*In re Martin* (1962) 58 Cal. 2d 509, 512 [24 Cal.Rptr. 833, 374 P.2d 801]; *People* v. *Huber* (1965) 232 Cal.App.2d 663, 671 [43 Cal.Rptr. 65].)

Respondent argues that the condition imposed by her caused only a one hour delay; that she did not cause any of the other delays; that she should have been allowed to telephone to her attorney immediately upon her arrival at the police station in Burlingame; that she was not allowed to telephone until the matron arrived at the station, which was about 2 a.m.; that she, the matron, and two officers then started for Redwood City but had an accident on the way, which resulted in a delay.

Miss Days, respondent's attorney, testified that she received the telephone call from respondent about 2 a.m.; that she was directed by respondent to meet her at the sheriff's office on Bradford Street in Redwood City; that it took her one hour to dress, telephone to a bail bondsman, drive to San Jose to meet him, and then drive with him to the sheriff's office in Redwood City; that upon arriving there "shortly after 3:00" a.m., she was told that respondent " 'just got here' " and that she could not see respondent until the "booking" process was completed; that she did not see respondent until "sometime between 4:00 and 4:30."

However, even if the delay caused by respondent's demand for the presence of her attorney was a period of only one

hour, the Department would still have had the right to suspend her license under section 13353.

In *Zidell* v. *Bright,* 264 Cal.App.2d 867 [71 Cal.Rptr. 111], Zidell was arrested in Milpitas for drunk driving. He was taken to the police station and the arresting officer requested that he take the chemical test prescribed by section 13353. After talking to his attorney over the telephone, he refused the request. The arresting officer then left the station.

Thirty to forty-five minutes later, Zidell changed his mind and agreed to take the test. The booking officer called the arresting officer but the latter refused to return to the station and no test was given.

The court held that the language of section 13353 "implies that the decision of the arresting officer whether to request a test, and the suspect's response thereto, *should not be delayed.* . . . The Legislature did not . . . give an accused drunk driver the right to refuse the officer's request to submit, and thereafter to demand the test." (Italics added.) The six-month suspension of Zidell's operator's license was upheld.

The Supreme Court stated in *People* v. *Sudduth, supra,* 65 Cal.2d 543, 546: "A refusal that might operate to suppress evidence of intoxication, which disappears rapidly with the passage of time [citation], should not be encouraged as a device to escape prosecution."

Again, in *In re Newbern,* 175 Cal.App.2d 862, 866 [1 Cal. Rptr. 80, 78 A.L.R.2d 901], the court stated: "It is a matter of common knowledge that the intoxicating effect of alcohol diminishes with the passage of time. In a matter of a few hours an intoxicated person may 'sober up.' The efficacy of a blood test depends upon its being made as soon as possible after the time of the offense. To be of any probative value the test must be 'near' to the offense in point of time. If it is not taken promptly after the arrest, it proves nothing."

Respondent calls attention to the portion of Penal Code section 825 which provides that an attorney "may, at the request of the prisoner . . . , visit the person so arrested." Assuming that Miss Days had to wait to see respondent from "shortly after" 3 a.m. to "sometime between 4:00 and 4:30" a.m., we fail to see how respondent was in any way prejudiced thereby.

In the only case cited by respondent on this point, *People* v. *Kingston,* 216 Cal.App.2d Supp. 879 [31 Cal.Rptr. 450], it was held that the defendant therein who was under arrest for driving while drunk, was not prejudiced by a denial of the

right to have her attorney visit her until the police had finished booking her. We make the same holding herein.

■ The final argument by respondent is that when an arrested person is asked to take a chemical test as provided in Vehicle Code section 13353 and that person demands that his counsel be present at the taking of such test, then the police are under a duty to warn him that he has no right to counsel at such a time. Respondent seems to infer that she might have agreed unconditionally to take a test when requested to do so by Officer Nofziger if he had given her such a warning.

Respondent relies entirely upon *People* v. *Ellis* (1966) 65 Cal.2d 529 [55 Cal.Rptr. 385, 421 P.2d 393], in making this argument. There the police warned the defendant, who was charged with attempted rape, that he had the right to remain silent. Thereafter, they asked him to speak so that the victim could hear his voice and he refused.

The Supreme Court held: "The usual Fifth Amendment warning that a suspect has a right to remain silent creates this problem for if taken literally it includes the right not to speak at all. After having given such a warning, if the police direct a defendant to speak for voice identification and he refuses, they must, as a prerequisite to the use of the defendant's refusal to speak as evidence of consciousness of guilt, advise him that the right to remain silent does not include the right to refuse to participate in such a test." (P. 539.)

In the first place there is nothing in the record to indicate that the police ever attempted to carry out a process of interrogation lending itself to eliciting incriminating statements or that the "*Miranda* warning" (*Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) or any similar warning was ever given or required.

Next, the *Ellis* case itself makes an exception as to a voice identification test because, under the facts therein, the suspect might well have become confused. The court in *Ellis* specifically held that the exception did not apply to a blood test.

"Even if the warning is understood in this literal sense, however, it is not misleading if the evidence sought is not speech for voice identification but evidence of other physical characteristics such as photographs, fingerprints, or *blood* samples." (65 Cal.2d, at p. 539, fn. 14; italics added.)

■ We hold that the condition imposed by respondent herein, that her attorney be present before she would consent

to taking one of the three tests prescribed by Vehicle Code section 13353, was in legal effect a refusal to take such test within the purview of that section.

Judgment reversed and the superior court is directed to make new findings and enter judgment in accordance with the views expressed herein.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied October 24, 1968.