## STATE v. ROBERT HUDSON PALMER.

191 N. W. (2d) 188.

October 15, 1971—No. 42764.

*Errol K. Kantor,* for appellant.

*Warren Spannaus,* Attorney General, *James M. Kelley,* Assistant Attorney General, and *Frederick S. Suhler, Jr.,* Special Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rogosheske, JJ.; reconsidered and decided on the record by the court en banc.

MURPHY, JUSTICE.

Appeal from an order of the district court denying defendant's motion for judgment notwithstanding the verdict or for a new trial in a proceeding by which the commissioner of highways, now the commissioner of public safety, revoked defendant's driver's license pursuant to Minn. St. 1969, § 169.123.

Defendant contends that he was denied right of counsel at the time chemical tests were offered pursuant to the implied-consent law. It is also contended that, although he initially refused the tests offered without advice of counsel, he changed his mind thereafter and that his conduct did not amount to a refusal under § 169.123, subd. 2.

From the record it appears that shortly after defendant had been taken into custody for the alleged offense of driving an automobile while under the influence of alcohol, he was brought to the Traffic Division Chemical Test Section of the Minneapolis Police Department. It is not disputed that he was there offered his choice of the three tests provided for in the implied-consent statute after that law had been fully explained to him. He refused to take a test and also refused to sign a statement to the effect that the tests had been offered to him. On his own behalf defendant testified that, after being informed of the implied-consent law, and before he was asked to acknowledge by signature his refusal to take a test, he stated that he did not "want to do anything until I talk to a lawyer because I am not familiar with it." An officer then delivered him to the custody of the Hen-

nepin County sheriff whose office is in the same building. While in the sheriff's office, he telephoned an attorney who advised him to take the test which he had previously refused. He then told the deputy sheriff that he would like to take the test, but this request was denied. This communication was made about an hour and 15 minutes after he had been brought to police headquarters. Pursuant to defendant's phone call, his attorney promptly appeared and secured his release. Defendant was taken by his attorney to the Hennepin County General Hospital where, within an hour after their arrival, a blood sample was taken. The sample tested at defendant's request for alcoholic content revealed a reading of 0.17 percent by weight and on recheck 0.168 percent.[1]

Pursuant to notification that defendant had refused the tests, the commissioner of highways, under authority of § 169.123, notified him that his driver's license would be revoked for 6

---

[1] The legal significance of this test is indicated by Minn. St. 1969, § 169.121, subd. 2, which so far as here relevant, provides in part: "For the purposes of this subdivision:

"(a)   evidence that there was at the time 0.05 percent or less by weight of alcohol in the person's blood is prima facie evidence that such person was not under the influence of an alcoholic beverage;

"(b)   evidence that there was at the time more than 0.05 percent and less than 0.10 percent by weight of alcohol in the person's blood is relevant evidence but it is not to be given prima facie effect in indicating whether or not the person was under the influence of an alcoholic beverage;

"(c)   evidence that there was at the time 0.10 percent or more by weight of alcohol in the person's blood may be admitted as prima facie evidence that the person was under the influence of an alcoholic beverage.

"The foregoing provisions shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not such person was under the influence of an alcoholic beverage, but the refusal to permit the taking of specimens for such chemical analysis shall not be admissible in evidence. In the event of a breath or urine test, the percentages above shall be increased by 10 percent."

months. In subsequent proceedings this order was upheld in municipal court and, on appeal therefrom to the district court, the order was again affirmed.

The record clearly indicates that at the time defendant was properly present at the facility for testing he refused to submit to any of the three tests offered. He was fully apprised of the possible penalty for such refusal. Minn. St. 169.123, subd. 4, provides:

"If a person under arrest refuses to permit chemical testing, none shall be given, but the commissioner of public safety, upon the receipt of a certificate of the peace officer that he had reasonable and probable grounds to believe the arrested person had been driving or operating a motor vehicle upon the public highways while under the influence of an alcoholic beverage, and that the person had refused to permit the test, shall revoke his license or permit to drive and any nonresident operating privilege for a period of six months. If the person is a resident without a license or permit to operate a motor vehicle in this state, the commissioner of public safety shall deny to the person the issuance of a license or permit for a period of six months after the date of the alleged violation, subject to review as hereinafter provided."

■ It is well settled that under the Federal and Minnesota Constitutions the accused, in all criminal prosecutions, shall enjoy the right to have assistance of counsel in his defense. State v. Waldron, 273 Minn. 57, 139 N. W. (2d) 785. That right does not extend to administrative or civil proceedings. In State, Department of Highways, v. Styrbicki, 284 Minn. 18, 21, 169 N. W. (2d) 225, 227, we held that an acquittal of the criminal charge of driving while intoxicated "does not preclude an administrative hearing to determine if his driving privileges should be withdrawn for his refusal to submit to a chemical test to determine the alcoholic content of his blood."

Defendant's contention that he was denied a constitutional right to advice of counsel in the present circumstances is con-

trolled by our decisions in State, Department of Highways, v. Normandin, 284 Minn. 24, 169 N. W. (2d) 222, and State, Department of Highways, v. Halvorson, 288 Minn. 424, 181 N. W. (2d) 473. In the former case, we pointed out that (284 Minn. 26, 169 N. W. [2d] 224) "revocation of a [driver's] license is not a punishment but is rather an exercise of the police power for the protection of the public." And, in the latter case, we said (288 Minn. 431, 181 N. W. [2d] 477) :

"* * * A license revocation proceeding is civil in nature, notwithstanding the vague language in § 169.123, subd. 6, that the judicial hearing 'shall proceed as in a criminal matter.' [Citing State, Department of Highways, v. Normandin, *supra.*] The defendant, therefore, is not clothed with those substantive constitutional rights associated with criminal matters."

The majority of the cases considering the issue of consent, conditioned upon the accused's prior consultation with counsel, have held that such condition constitutes refusal. Ent v. Department of Motor Vehicles, 265 Cal. App. (2d) 936, 71 Cal. Rptr. 726; Fallis v. Department of Motor Vehicles, 264 Cal. App. (2d) 373, 70 Cal. Rptr. 595 (refusal to take the test has not been declared to be a crime or punishable as such) ; Reirdon v. Director of Dept. of Motor Vehicles, 266 Cal. App. (2d) 808, 72 Cal. Rptr. 614; Blow v. Commissioner of Motor Vehicles, 83 S. D. 628, 164 N. W. (2d) 351 (recognizing that an implied consent proceeding is administrative and civil in nature and therefore there is no right to counsel); Gottschalk v. Sueppel, 258 Iowa 1173, 140 N. W. (2d) 866; Finocchairo v. Kelly, 11 N. Y. (2d) 58, 226 N. Y. S. (2d) 403, 181 N. E. (2d) 427, certiorari denied, 370 U. S. 912, 82 S. Ct. 1259, 8 L. ed. (2d) 405. In Deaner v. Commonwealth, 210 Va. 285, 292, 170 S. E. (2d) 199, 204, the court considered Virginia's implied-consent law which is similar to our own, and noted:

"In Virginia the consent to take a blood test is given when a person operates a motor vehicle. It is not a qualified consent and

it is not a conditional consent, and therefore there can be no qualified refusal or conditional refusal to take the test.

\* \* \* \* \*

"Our conclusion is that the blood test prescribed is a part of a civil and administrative proceeding and that [defendant] had no right to condition his taking the test upon his ability first to consult with counsel. \* \* \* There has been no violation here of any constitutional right \* \* \*."

In Mills v. Bridges, 93 Idaho 679, 681, 471 P. (2d) 66, 68, the court said:

"It has been quite uniformly held by the courts which have considered the issue that a qualified or conditional refusal to take a test to determine the level of blood alcohol is a refusal within the meaning of statutes similar to ours. A defendant cannot condition his consent to the test upon the presence of counsel. [Citations omitted.]

\* \* \* \* \*

"\* \* \* The weight of authority is to the effect that because an administrative proceeding for the suspension of a driver's license is a civil proceeding, and not a criminal prosecution, a defendant does not have a constitutional right to consult with an attorney before deciding whether to accede to an officer's request to submit to a blood test."

See, also, David v. Strelecki, 51 N. J. 563, 242 A. (2d) 371; Severson v. Sueppel, 260 Iowa 1169, 152 N. W. (2d) 281; Blydenburg v. David (Mo.) 413 S. W. (2d) 284; Rust v. Department of Motor Vehicles, 267 Cal. App. (2d) 545, 73 Cal. Rptr. 366; Westmoreland v. Chapman, 268 Cal. App. (2d) 1, 74 Cal. Rptr. 363; and see, generally, Annotation, 88 A. L. R. (2d) 1064.

■ Defendant further contends that after he talked to his attorney he told his custodians that he had changed his mind and wished to submit to the proper test and that the conduct of the custodians in refusing his request was arbitrary and unreasonable; and that, in view of the fact that he was not certain as

to which would be the best course to take, his initial refusal was made on "reasonable grounds," as comprehended by § 169.123, subd. 6. See, State, Department of Highways, v. Schlief, 289 Minn. 461, 185 N. W. (2d) 274. The district court, however, was of the view that under the circumstances the officers in charge were not required to consider the refusal as one which was conditional or subject to withdrawal.

While defendant's custodians might well have permitted him to take the test after he had changed his mind, we cannot say that the refusal was fatal to the revocation proceedings. Other courts which have considered the circumstances which might arise in such a situation have apparently attributed to the statute a legislative intent that even though the defendant might not be expected to make a well-considered judgment under the circumstances, he is bound, nevertheless, by the judgment he makes. There is no provision in the statute as to how much time he may have to make up his mind. The statute, § 169.123, subd. 4, provides: "If a person under arrest refuses to permit chemical testing, none shall be given * * *." Varying situations have arisen in which the accused has sought to evade the consequences of refusal by asserting the existence of "reasonable grounds." State, Department of Highways, v. Lauseng, 289 Minn. 344, 183 N. W. (2d) 926, and State, Department of Highways, v. Schlief, *supra*.

The district court, in a well-considered memorandum, relied upon Krueger v. Fulton (Iowa) 169 N. W. (2d) 875, and Zidell v. Bright, 264 Cal. App. (2d) 867, 71 Cal. Rptr. 111, and concluded:

"In the opinion of this Court, the refusal to take a test at a time tests are offered cannot be avoided by a later offer to take a test at a place where testing equipment is not readily available and at a time the request or offer is made to an officer not qualified to give such tests."

The foregoing is consistent with the view expressed in State, Department of Highways, v. Lauseng, 289 Minn. 344, 345, 183 N. W. (2d) 926, 927, where we noted that the testing officers

should not be required "to await the driver's convenience of a different time or place" to submit to the statutory requirement.

Affirmed.

OTIS, JUSTICE (dissenting).

As I read Minn. St. 481.10, the arresting officers had an absolute duty to notify defendant's attorney of his request for consultation before proceeding any further with the chemical tests once defendant had asked for an opportunity to call his lawyer. That statute, with emphasis provided, reads thus:

"All officers or persons having in their custody a person restrained of his liberty upon any charge or cause alleged, except in cases where imminent danger of escape exists, shall admit any resident attorney retained by or in behalf of the person restrained, or whom he may desire to consult, to a private interview at the place of custody. *Such custodians, upon request of the person restrained, as soon as practicable, and before other proceedings shall be had, shall notify any attorney residing in the county of the request for a consultation with him.* Every officer or person who shall violate any provision of this section shall be guilty of a misdemeanor and, in addition to the punishment prescribed therefor shall forfeit $100 to the person aggrieved, to be recovered in a civil action."

It is undisputed that as soon as defendant was advised of the effect of his refusal to take the test, he made a timely request for an opportunity to consult counsel. This resulted in no undue delay or any prejudice to the state in administering the test. Under such circumstances, I submit it was unreasonable for the arresting officers to refuse to administer the test after defendant was advised by his attorney to submit to testing. In my opinion, it is arbitrary and unjust to deny a defendant who has been arrested for driving under the influence the opportunity of making a phone call to determine his rights. I would agree that this is not a constitutional matter and that the police need not consent to a delay while an attorney appears in person or to any other delay which would prejudice the accuracy of the test.

This is not such a case, however, since all that was sought and obtained was a single phone call. Consequently, I would reverse.

ROGOSHESKE, JUSTICE (dissenting).

I join in the dissent. Even though Minn. St. 481.10 was apparently not called to the attention of the trial courts or cited in argument before this court, its laudable purpose and intent, and its application to the facts of this case, so well expressed by my brother Otis, cannot be disregarded.

KELLY, JUSTICE (dissenting).

I join in the dissent of Mr. Justice Otis.