Robert C. ANDERSON, Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC SAFETY, Appellant.

No. C9-85-1053.

Court of Appeals of Minnesota.

Jan. 14, 1986.

Bernie M. Dusich, Kevin Patrick Carroll, Rosemount, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Joel Watne, Kenneth H. Bayliss, III, Sp. Asst. Attys. Gen., St. Paul, for appellant.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

SEDGWICK, Judge.

Respondent's driving privileges were revoked for refusal to take a breath test. Respondent petitioned for judicial review, and the trial court found that no refusal had occurred. The Commissioner of Public Safety appeals. We reverse.

## FACTS

Deputy Sheriff Jerome Cotton was driving in the City of Rosemount when he came upon a two car accident. He asked the two drivers whether they were injured and how the accident occurred. Respondent, a volunteer firefighter for the City of Rosemount, said he was responding to a fire call when the other driver drove out of a parking lot and collided with him. Cotton estimated the accident occurred at 1:55 a.m.

Because Cotton was outside his patrol area, he requested assistance from the Rosemount Police Department to handle the accident. Officer Mark Robideau arrived at the scene about 2:00 a.m. Cotton advised Robideau that he had detected the odor of alcohol from the two men while he was talking to them.

Robideau offered respondent a portable breath test, which he failed. Robideau asked respondent if he had been drinking. Respondent replied that he had had "a few." Robideau arrested him for driving while intoxicated and read him the implied

consent advisory. Respondent turned his back to Robideau and was argumentative and upset during the reading. Robideau felt respondent was ignoring him. Respondent was offered a breath test. After 15 to 20 seconds of silence, Robideau deemed respondent's non-response a refusal.

Officer Ray McNamara, who had also arrived on the scene, handled the accident report. Within 15 minutes of Robideau's determination that respondent refused the test, McNamara, who is also the fire chief, talked to respondent. After their talk, McNamara told Robideau that respondent changed his mind and was willing to take the breath test. Robideau told McNamara that respondent had his chance to take the test, he had refused, and Robideau invoked the implied consent law. He had completed the paperwork for respondent, and was processing the other driver.

McNamara testified that if Robideau had agreed to allow respondent to take the test, it would have taken an additional 10 minutes to correct or rewrite the paperwork. He also testified that, typically, it may take an hour from the time a person is stopped until the time a test is administered. Under the circumstances, time constraints probably would not have prevented respondent from taking the test.

Respondent's driving privileges were revoked on the ground that he refused to take the test. He petitioned for judicial review, and the trial court rescinded the revocation. The Commissioner appeals.

## ISSUES

1. Did the trial court err in concluding that respondent did not "refuse" the test when he did not respond to the officer's offer of a breath test?

2. If respondent's silence was a refusal, may he cure the refusal by later agreeing to take the test?

## ANALYSIS

1. The implied consent law provides that any person who drives a motor vehicle consents to a chemical test to determine the presence of alcohol. Minn.Stat. § 169.-123, subd. 2 (1984). The consequence of refusing the test is revocation of the driver's license for one year. Minn.Stat. § 169.123, subd. 4. A driver whose license is revoked may petition for judicial review of the decision. Minn.Stat. § 169.123, subd. 5c. One of the grounds upon which review may be sought is whether the driver refused to permit the test. Minn.Stat. § 169.123, subd. 6(3)(a).

The trial court concluded as a matter of law that respondent's silence did not amount to a refusal. Upon review, the trial court's conclusions of law are not binding on an appellate court. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn.1977).

The trial court found that respondent did not answer various questions asked of him pursuant to the implied consent advisory, "the effect being that he did not answer that he would take any test." Officer Robideau testified that respondent turned away when asked questions, and was argumentative and upset during the eight minutes it took the officer to read the advisory. There is no dispute that respondent was silent during the 15 to 20 seconds between the time of the officer's request that he take the test, and the officer's determination that respondent's silence constituted refusal. But respondent made no response to the officer for 15 minutes after the determination that he refused. He did not indicate he wanted to consider whether or not to take the test, or that he would take the test. Only after talking to his fire chief did he indicate, through Officer McNamara, that he was then willing to take the test. The trial court in its conclusions of law stated:

The arresting officer deprived the Petitioner of his legal right to assent to take the test by his failure to allow Petitioner to change his mind after an elapse of only 15 minutes where Petitioner had not refused the test in the first instance and just did not answer, but later indicated that he would take the test.

A driver may communicate refusal to take a test by either words or acts. For example, Minn.Stat. § 169.123, subd. 2b(c), provides that if the test given is an intoxilyzer, "failure of a person to provide two separate, adequate breath samples in the proper sequence constitutes a refusal." This court recently upheld a trial court's finding of a refusal when the driver blew around, rather than directly in, an intoxilyzer mouthpiece. *Connolly v. Commissioner of Public Safety*, 373 N.W.2d 352, 354 (Minn.Ct.App.1985).

In *Sigfrinius v. Commissioner of Public Safety*, 378 N.W.2d 124 (Minn.Ct.App. 1985), this court found the failure of a driver to remove breath mints from his mouth was an attempt to frustrate the administration of the breath test and therefore a refusal.

The legislature clearly intended to encourage drivers to take a chemical test to determine whether they were driving while intoxicated. The consequence for refusing the test is revocation of the driver's license for one year. Minn.Stat. § 169.123, subd. 4. The consequence for "failing" the test, *i.e.*, taking the test with a result of an alcohol concentration of 0.10 or more, is revocation of the driver's license for 90 days.

■ The following circumstances convince us that respondent's behavior indicated a refusal as a matter of law: (1) During the eight minutes it took the police officer to read the implied consent advisory, respondent was argumentative and turned his back on the officer while being questioned; (2) the officer asked respondent to take the test, waited for 15–20 seconds and received no response; (3) during the next 15 minutes respondent had no communication with the officer and never indicated he would take the test, or that he was even considering it.

■ 2. The trial court also determined that the officer should have allowed respondent to take the test when he communicated to Officer Robideau through Offi-

cer McNamara that he was willing to take the test.

A prompt decision as to whether the driver will take the test is in keeping with the purpose of the statute, which is to protect the public from the hazards of intoxicated drivers. *State Department of Highways v. Normandin*, 284 Minn. 24, 26, 169 N.W.2d 222, 224 (1969).

The Minnesota Supreme Court has indicated that a refusal is final:

[Respondent's] expression of willingness to take the test after she talked with her attorney was an ineffective attempt to avoid the consequences of her refusal. *State, Dept. of Public Safety v. Early*, 310 Minn. 428, 247 N.W.2d 402 (1976); *State v. Palmer*, 291 Minn. 302, 308–09, 191 N.W.2d 188, 191–92 (1971) ("the testing officers should not be required 'to await the driver's convenience of a different time or place' to submit to the statutory requirement.")

*Nyflot v. Commissioner of Public Safety*, 369 N.W.2d 512, 517, n. 4 (Minn.) *appeal dismissed*, —— U.S. ——, 106 S.Ct. 586, —— L.Ed.2d —— (1985).

This court noted that an implied consent advisory which included the sentence: "Your decision whether or not to submit to testing is final and may not be changed following any conversation with your attorney" was not an incorrect statement of Minnesota law. *Hallock v. Commissioner of Public Safety*, 372 N.W.2d 82, 83 (Minn. Ct.App.1985). Consequently, we reverse the trial court.

■ 3. The trial court concluded that respondent's constitutional right to consult an attorney prior to making a decision as to the test was violated. A driver has no statutory or constitutional right to consult an attorney prior to deciding whether to submit to chemical testing. *Nyflot*, 369 N.W.2d at 513.

## DECISION

The trial court clearly erred in concluding that respondent did not refuse a breath test. His behavior constituted a refusal as

a matter of law. Respondent could not avoid the consequences of his refusal by subsequently agreeing to take the test. Respondent had no statutory or constitutional right to consult an attorney prior to deciding whether to submit to chemical testing.

Reversed.