**Belinda Blanch TORLAND,**
**Petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC**
**SAFETY, Appellant.**

No. C8–85–2260.

Court of Appeals of Minnesota.

July 22, 1986.

Joseph V. Bot, Marshall, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Mary B. Magnuson, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by FORS-BERG, P.J., and SEDGWICK and RANDALL, JJ.

## OPINION

SEDGWICK, Judge.

Respondent's driving privileges were revoked by the Commissioner of Public Safety for refusing to take a chemical test to determine the presence of alcohol. The trial court concluded that under the totality of the circumstances the respondent did not refuse testing, and it rescinded the revocation. The Commissioner of Public Safety appeals. We reverse.

## FACTS

Police Officer Dennis Dean Hefti was on duty October 1, 1985, at approximately 1:30 a.m., when he noticed respondent Belinda Blanch Torland's vehicle being driven erratically. He stopped the car and noticed respondent displayed indicia of intoxication. Respondent was unable to complete several field sobriety tests. A preliminary breath test was offered, but she did not blow long enough to obtain a reading; she refused a second attempt. Hefti placed respondent under arrest and brought her to the police station.

At the police station, Hefti read respondent the implied consent advisory and offered her a blood or urine test. Her response was "no." Her reason for refusing was "no cause." Hefti noted on the implied consent form that the test was refused. He issued a traffic citation charging respondent with driving while under the influence. He then filled out the Minnesota temporary driver's license and notice of revocation. This process took about 30 minutes, after which time respondent was permitted to call an attorney. After talking to counsel, she told the officer she wanted the blood test. Hefti told her she had already refused, and he had completed the forms.

Hefti testified that it would have been possible to take respondent to the local hospital emergency room for a blood test. He testified he had nothing else to do at that time, and he could have taken her.

## ISSUE

May respondent, who initially refused testing, avoid the consequences of refusal by agreeing to take the test approximately 30 minutes later, after talking to an attorney?

## ANALYSIS

The implied consent statute provides that when an officer has probable cause to believe a person has been driving while under the influence, he may require that person to take a chemical test to determine the presence of alcohol. Minn.Stat. § 169.123,

subd. 2(a) (Supp.1985). If a person refuses the test, none shall be given. Minn.Stat. § 169.123, subd. 4 (1984). The consequence of refusing testing is revocation of the driver's license for one year. *Id.*

The facts here are similar to those in *Nyflot v. Commissioner of Public Safety,* 369 N.W.2d 512 (Minn.), *appeal dismissed,* —— U.S. ——, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985), although the legal issue presented is different.

Nyflot initially insisted on calling her attorney before deciding whether to take a test. When deputies explained she did not have that right, she first agreed to take the test, and one of the deputies began to set up the Breathalyzer. She then said she would not take the test. The deputy told her that was a refusal. She then was permitted to call her attorney, and after talking to him said she would take a test. She was told she had already refused and could not change her mind. *Id.* at 514. The supreme court, addressing the main issue in the case, held that a driver has neither a statutory nor a constitutional right to counsel prior to making the decision as to whether to submit to chemical testing. *Id.* at 513. The supreme court noted:

> Nyflot's expression of willingness to take the test after she talked with her attorney was an ineffective attempt to avoid the consequences of her refusal. *State, Dept. of Public Safety v. Early,* 310 Minn. 428, 247 N.W.2d 402 (1976); *State v. Palmer,* 291 Minn. 302, 308–09, 191 N.W.2d 188, 191–92 (1971) ("the testing officers should not be required 'to await the driver's convenience of a different time or place' to submit to the statutory requirement.")

*Id.* at 517 n. 4. While the trial court and the respondent distinguish *Nyflot* on the facts, we do not find the cases distinguishable. In both cases the drivers refused testing, called their attorneys, and then agreed to take the test. As in *Nyflot,* the driver here cannot avoid the consequences of her refusal by subsequently agreeing to take the test. *See also Anderson v. Com-*

*missioner of Public Safety,* 379 N.W.2d 678, 681 (Minn.Ct.App.1986); *Hallock v. Commissioner of Public Safety,* 372 N.W.2d 82, 83 (Minn.Ct.App.1985).

In light of the supreme court's clear language in *Nyflot,* that a driver is bound by an initial decision to refuse testing, the cases cited by respondent from other jurisdictions are not applicable.

Contrary to respondent's contention, we find no indication that the legislature intended to allow a driver to agree to testing after an initial refusal and consultation with an attorney, and thus avoid the consequences of refusal. In *Palmer,* the driver refused testing. After he talked to his attorney, he changed his mind and wished to submit to testing, but the deputy denied his request. The supreme court noted:

> While defendant's custodians might well have permitted him to take the test after he had changed his mind, we cannot say that the refusal was fatal to the revocation proceedings. Other courts which have considered the circumstances which might arise in such a situation have apparently attributed to the statute a legislative intent that even though the defendant might not be expected to make a well-considered judgment under the circumstances, he is bound, nevertheless, by the judgment he makes. There is no provision in the statute as to how much time he may have to make up his mind.

*Palmer,* 291 Minn. at 308, 191 N.W.2d at 191.

### DECISION

The officer was not required to allow the driver to take a test where she had refused, then talked to an attorney and agreed to take the test. The trial court erred when it determined that no refusal occurred under the facts of the case.

Reversed and revocation of license reinstated.