*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2090**

Jack Kenneth Pence, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed August 17, 2015
Affirmed
Johnson, Judge**

Dakota County District Court
File No. 19WS-CV-14-568

Jeffrey S. Sheridan, Sheridan & Dulas, P.A., Eagan, Minnesota (for appellant)

Lori Swanson, Attorney General, Peter D. Magnuson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Johnson, Presiding Judge; Ross, Judge; and Willis, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

The commissioner of public safety revoked Jack Kenneth Pence's driver's license and impounded his license plates after he was arrested for driving while impaired and

---

[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

refused to submit to a breath test. Pence sought judicial review of the commissioner's decision, and the district court denied Pence's petition to rescind the revocation and impoundment. We affirm.

**FACTS**

At approximately 9:00 p.m. on April 11, 2014, Officer Nicole Wilson of the Inver Grove Heights Police Department was on patrol when she received a report that an intoxicated person was inside a car at a gas station and might attempt to drive. Officer Wilson responded to the report and made contact with the driver, Pence. Officer Wilson observed that Pence appeared to be drunk based on the odor of alcohol "radiating from his person," bloodshot and watery eyes, and slow and delayed movements. Officer Wilson investigated further and arrested Pence on suspicion of driving while impaired (DWI).

Officer Wilson transported Pence to the police station. She read him the implied-consent advisory, which informed him that refusal to take a chemical test is a crime and that he had a limited right to consult with an attorney. Pence said that he understood the advisory and wished to consult with an attorney. Officer Wilson provided Pence with a telephone and several telephone books at 9:28 p.m. Pence did not open the telephone books or pick up the telephone. Officer Wilson reminded him several times that this was his opportunity to consult with an attorney. When Pence became "verbally confrontational" with Officer Wilson and indicated that he did not want to speak with her anymore, Sergeant Kasey Schrandt intervened. Pence asked Sergeant Schrandt for assistance in contacting an attorney he described as "Mr. Sheridan." Sergeant Schrandt

2

advised Pence that he would not assist Pence in finding a particular attorney's telephone number and that Pence needed to use the telephone books himself to find an attorney's telephone number. Pence did not use either the telephone books or the telephone. Officer Wilson terminated Pence's consultation time at 9:49 p.m. She later testified that she did so because Pence "was making no effort to contact an attorney."

Officer Wilson asked Pence whether he would submit to a breath test. Pence responded by saying, "Sure, but I would like a lawyer." Sergeant Schrandt started the DataMaster testing machine and instructed Pence to stand up and step toward the machine. Pence did not move from his chair. Sergeant Schrandt advised Pence that the machine was running and that if he did not give a breath sample within three minutes, the machine would indicate a refusal. Sergeant Schrandt asked Pence multiple times to give a breath sample. After the three-minute time period expired, the machine gave a "deficient" signal, and the officers deemed Pence to have refused the test.

The commissioner of public safety revoked Pence's driver's license and impounded his license plates. Pence petitioned the district court for rescission of the revocation and impoundment. Pence argued that his limited right to counsel was not vindicated, that he did not refuse the breath test, and that the test-refusal statute violated his constitutional right to due process. The district court held a hearing on Pence's petition in July 2014. Officer Wilson and Sergeant Schrandt testified for the commissioner. Pence did not present any evidence. In September 2014, the district court sustained the license revocation and license-plate impoundment. Pence appeals.

## D E C I S I O N

## I. Limited Right to Counsel

Pence first argues that the district court erred by concluding that his limited right to counsel was vindicated.

A driver who is suspected of DWI has a limited right to consult with an attorney before deciding whether to submit to chemical testing. *Friedman v. Commissioner of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991) (citing Minn. Const. art. I, § 6). The driver's limited right to consult with an attorney before testing is "vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel." *Id.* (quotation omitted). If the driver is unable to consult with an attorney within a reasonable time, "the person may be required to make a decision regarding testing in the absence of counsel." *Id.* (quotation omitted). This court applies a clear-error standard of review to the district court's factual findings and a *de novo* standard of review to a district court's conclusion as to whether a driver's limited right to counsel was vindicated. *Mell v. Commissioner of Pub. Safety*, 757 N.W.2d 702, 712 (Minn. App. 2008); *State v. Christiansen*, 515 N.W.2d 110, 112 (Minn. App. 1994), *review denied* (Minn. June 15, 1994).

In deciding whether a driver's limited right to counsel was vindicated, a court should consider the totality of the circumstances surrounding the implied-consent advisory and the driver's opportunity to consult with an attorney. *Mell*, 757 N.W.2d at 713. The caselaw has recognized a few factors that generally are relevant to the question whether a driver was given a reasonable opportunity to consult with counsel: whether the

4

driver made a good-faith and sincere effort to reach an attorney, the time of day when the driver attempted to contact an attorney, and the length of time the driver had been under arrest when his consultation time was ended. *See Palme v. Commissioner of Pub. Safety*, 541 N.W.2d 340, 344-45 (Minn. App. 1995), *review denied* (Minn. Feb. 27, 1996); *Kuhn v. Commissioner of Pub. Safety*, 488 N.W.2d 838, 842 (Minn. App. 1992), *review denied* (Minn. Oct. 20, 1992).

In this case, the totality of the circumstances supports the district court's conclusion that Pence's limited right to counsel was vindicated. The most significant factor is whether Pence was making a good-faith and sincere effort to contact an attorney. He plainly was not making such an effort. He made no use whatsoever of the telephone books and the telephone that were provided to him. Pence emphasizes the fact that he was allowed only 21 minutes before his attorney consultation time was terminated. But in light of the absence of any effort on his part to contact an attorney, no apparent purpose would have been served by giving him more time.

Pence also contends that his limited right to counsel was not vindicated because Sergeant Schrandt did not assist him in contacting "Mr. Sheridan." He relies on *Friedman* in arguing that "police officers must assist in the vindication of the right to counsel." The *Friedman* opinion imposes some obligations on a law-enforcement officer to assist a driver who wishes to consult with an attorney but not to the extent that Pence urges. The supreme court stated, "The right to counsel will be considered vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel." *Friedman*, 473 N.W.2d at 835 (quotation omitted).

5

Nothing in the caselaw since *Friedman* would require an officer to do more than provide a telephone and telephone books. We understand Sergeant Schrandt's reticence to assist Pence in his selection of an attorney and conclude that he did not fail to vindicate Pence's limited right to counsel by refraining from providing a more expansive form of assistance.

Thus, the district court did not err by concluding that Pence's limited right to counsel was vindicated.

## II. Refusal

Pence next argues that the district court erred by finding that he refused to submit to a breath test.

A law-enforcement officer may request that a driver submit to a chemical test of the person's blood, breath, or urine, if the officer has "probable cause to believe the person was driving, operating, or in physical control of a motor vehicle" while impaired. Minn. Stat. § 169A.51, subd. 1(b) (2014). "If a person refuses to permit a [chemical] test, then a test must not be given." Minn. Stat. § 169A.52, subd. 1 (2014). But a consequence of refusing to submit to a chemical test is revocation of one's driver's license. *Id.*, subd. 3. The commissioner also must impound the driver's license plates if the driver's arrest is "within ten years of a qualified prior impaired driving incident." Minn. Stat. § 169A.60, subds. 1(d)(1), 2(a)(1) (2014).

"A driver has a duty to comply reasonably with the administration of a test, and failure to do so constitutes a refusal." *Sigfrinius v. Commissioner of Pub. Safety*, 378 N.W.2d 124, 126 (Minn. App. 1985). A driver may be deemed to have refused chemical

6

testing by his or her actions, even in the absence of an oral refusal. *Busch v. Commissioner of Pub. Safety*, 614 N.W.2d 256, 259-60 (Minn. App. 2000); *see also State v. Ferrier*, 792 N.W.2d 98, 100-02 (Minn. App. 2010) (affirming conviction of criminal refusal to submit to chemical testing), *review denied* (Minn. Mar. 15, 2011). In other words, "[a] driver may communicate refusal to take a test by either words or acts." *Anderson v. Commissioner of Pub. Safety*, 379 N.W.2d 678, 681 (Minn. App. 1986). "Whether one has refused testing is a question of fact," and "a district court's factual findings will not be disturbed unless clearly erroneous." *Busch*, 614 N.W.2d at 258.

Pence contends that he did not refuse to submit to the breath test but was merely trying to assert his limited right to counsel. The district court found that Pence refused the breath test because he "did nothing to cooperate" with the breath test. This finding is supported by the evidence in the record. Sergeant Schrandt testified that Pence "refused to [get] out of his chair" when he was asked to give a breath sample. Furthermore, the officers informed Pence that his failure to give a breath sample within the three-minute time period would be considered a refusal of the test. The district court's finding of refusal also is supported by the caselaw. *See Anderson*, 379 N.W.2d at 681 (affirming finding that driver refused breath test by sitting silent after being asked to take test); *Sigfrinius*, 378 N.W.2d at 125 (affirming finding that driver refused breath test by not removing mints from his mouth); *Connolly v. Commissioner of Pub. Safety*, 373 N.W.2d 352, 353-54 (Minn. App. 1985) (affirming finding that driver refused breath test by blowing "around the mouthpiece and not directly into the machine").

Thus, the district court did not clearly err by finding that Pence refused to submit to a breath test.

### III. Constitutionality of Test-Refusal Statute

In his appellate brief, Pence argues that the revocation of his license and impoundment of his license plates should be rescinded because the test-refusal statute is unconstitutional. At oral argument, Pence's counsel acknowledged that this argument is inconsistent with the supreme court's recent opinion in *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015), *pet. for cert. filed* (U.S. June 16, 2015) (No. 14-1470). Counsel stated that he is not abandoning the argument but wishes merely to preserve it without waiving it. Because counsel has conceded that the argument presently is foreclosed by *Bernard*, we need not analyze the merits of the argument.

In sum, the district court did not err by denying Pence's petition to rescind the revocation of his driver's license and impoundment of his license plates.

**Affirmed.**