290 A.2d 858.

STATE *ex rel.* ERNEST E. WIDERGREN *vs.* EDWARD J. CHARETTE.

MAY 17, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Roberts, C. J. This case is before us on certification from the District Court of questions concerning the con-

stitutionality of an act of the General Assembly, pursuant to G. L. 1956 (1969 Reenactment) §12-22-10.

The record discloses that defendant was taken into custody on September 20, 1969, by a member of the Warwick Police Department and charged with a violation of G. L. 1956 (1968 Reenactment) §31-27-2. This statute, in pertinent part, makes it unlawful "* * * for any person who is under the influence of intoxicating liquor to a degree which renders him incapable of safely operating a vehicle to drive or be in actual physical control of any vehicle within this state." At that time the arresting officer requested defendant to submit to a Breathalyzer examination of his breath for the purpose of making a determination of the alcoholic content of his blood.

The defendant submitted to the Breathalyzer test and the results thereof were made available to the Warwick Police Department. Thereafter and immediately prior to trial, defendant moved to suppress the admission of the results of the test into evidence. He testified that when requested to submit to the Breathalyzer test he knew that under the statute, §31-27-2.1, his operator's license would be suspended by the Registrar of Motor Vehicles if he refused to submit to such examination. The motion to suppress the evidence was denied, and the case proceeded to trial.

At trial, evidence that defendant consented to take the Breathalyzer test was adduced and the results of the test were offered in evidence by the prosecution. The defendant objected on the same grounds as set forth in his motion to suppress. Again, after all the evidence was in, defendant, before resting, moved to dismiss the case on the same contentions. According to the order of certification, the District Court then reserved decision on the constitutionality of said statute and proceeded as if the statute were constitutional.

The defendant introduced no evidence but in argument repeated his constitutional contentions, which the court again rejected and found defendant guilty as charged. At that point the court, pursuant to §12-22-10, stayed sentence of defendant and certified four questions to this court, which are attached to this opinion as Appendix A.

Section 12-22-10 provides that when the constitutionality of an act of the General Assembly shall come into question in a criminal trial in any court, a decision on that question will be reserved and the trial shall proceed as if the statute were constitutional. If the defendant be found guilty, sentence shall be stayed and the constitutional question shall be certified to this court forthwith for its decision.[1]

The clear purpose of the statute is to expedite the trial of criminal cases by providing for the certification of questions concerning the constitutionality of a statute to the Supreme Court when the defendant is convicted on an assumption by the trial court that the challenged statute was constitutional. It is equally clear, in our opinion, that constitutional questions, to be eligible for certification under the statute, must be raised on the record with particularity and clarity. *Mailey* v. *Estate of De Pasquale,* 94 R. I. 31, 177 A.2d 376 (1962).

We have said that the statute does not contemplate the certification of a constitutional question simply because at first glance it appears to be difficult of resolution. *Tilling-*

---

[1]Section 12-22-10 reads as follows: "Whenever the constitutionality of any act of the general assembly shall be brought in question in the trial of a criminal cause in any court, the decision of the question shall be reserved, and the trial of the case in other respects shall proceed as if the statute were constitutional; and if the defendant shall be found guilty, sentence shall be stayed, and the constitutional question raised, together with a record of the case, and a transcript of the testimony, or so much thereof as pertains to the constitutional question, shall be certified and transmitted forthwith to the supreme court for decision."

*hast* v. *Johnson,* 34 R. I. 136, 139, 82 A. 788, 790 (1912). We have stated frequently that questions should be referred to this court under certification statutes only when they are of doubt and importance and not then "* * * unless and until the trial justice, after careful consideration, aided by the research and arguments of counsel is unable to reach a satisfactory conclusion * * *." *State* v. *Walsh,* 108 R. I. 518, 523, 277 A.2d 298, 301 (1971).

One thing should be understood by the trial justices with respect to this particular statute. It does not require the Supreme Court to give advisory opinions on constitutional questions and this particularly where the statute, the constitutionality of which has been challenged, is neither pertinent nor relevant to the controlling issues raised in the case. The statute, to be referable under this statute, must be one that directly and adversely impinges upon some constitutionally protected right of the defendant. It is well settled that this court will not pass upon the constitutionality of a statute where, if it were found to be unconstitutional, the party who had challenged its constitutionality would take nothing. *King* v. *Williamson,* 103 R. I. 640, 240 A.2d 408 (1968).

It is our opinion that none of the questions certified to us can reasonably be regarded as resting on a challenge to the constitutionality of the statutes herein referred to. The trial court apparently accepted the contention of defendant that the constitutionality of §31-27-2.1 was brought into question on the theory that defendant consented to the arresting officer's request because he at that time was aware that under the provisions of that statute a refusal to submit to the test would result in a suspension of his operator's license by the Registrar of Motor Vehicles for a period of six months.[2]

---

[2]Section 31-27-2.1 is an "implied consent" statute, so called. "Any person who operates a motor vehicle upon the public highways of this state

This argument overlooks the fact that the statutory grant of authority to the Registrar to penalize a defendant who refuses to take the test, and we emphasize that we are not at this time deciding whether a suspension of an operator's license is a penalty, was not an issue in the case before that court. This for the reason that defendant did, in fact, consent to submit to the test and as a consequence thereof the Registrar of Motor Vehicles was without statutory authority to suspend the operator's license. In other words, this is a typical situation in which it would avail the defendant nothing if we were in fact to find that the challenged provisions of §31-27-2.1 were unconstitutional. *King* v. *Williamson, supra.* We are constrained, then, to decline to answer the specific questions certified to this court by the trial court.

However, in order to expedite the disposition of this case in the court below, we will consider the question of whether in the circumstances defendant's fifth amendment privilege against self-incrimination was violated by the admission into evidence of the results of the Breathalyzer test. The defendant contends that the evidence of the results of the test was self-incriminatory and was obtained by compulsion, the coercive force being his knowledge that

shall be deemed to have given his consent, to a chemical test of his breath, blood, or urine for the purpose of determining the alcoholic content of his blood * * *. If such person having been placed under arrest refuses upon the request of such law enforcement officer to submit to a chemical test as provided in §31-27-2, as amended, none shall be given, but the registrar, upon receipt of a sworn report of such law enforcement officer that he had reasonable grounds to believe the arrested person had been driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor, that the defendant had been informed of his rights in accordance with §31-27-3, that the defendant had been informed of the penalties incurred as a result of non-compliance with this section, and that the person had refused to submit to the test upon the request of the law enforcement officer, shall suspend his license or permit to drive and any nonresident operating privilege for a period of six (6) months from the date of the alleged violation * * *."

if he did not take the test, his license would be suspended. In other words, does the requirement that an accused submit to tests to determine the content of the alcohol in his breath, blood, or urine or lose his operator's license compel a defendant to testify against himself? It is clear that the question of whether this compels one to incriminate himself depends upon an antecedent question, that being whether the fifth amendment privilege against self-incrimination extends to evidence of a character other than testimonial or communicative.

In *Schmerber* v. *California*, 384 U. S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Court held that the privilege protects an accused only from being compelled to testify against himself or provide the state with evidence of a testimonial or communicative nature. That case involved the withdrawal of blood for use for analysis on the question of the amount of alcohol in the blood of the operator of a motor vehicle. Despite some confusion in the language of the majority opinion, the Court appears to hold in that case that the direction of a police officer to a physician to administer the test over the petitioner's objection constituted compulsion for the purposes of the privilege. However, the Court recognized that the controlling question was "* * * whether petitioner was thus compelled 'to be a witness against himself.' " *Id.* at 761, 86 S.Ct. at 1831, 16 L.Ed.2d at 914. The Court held that evidence of the results of tests such as the Breathalyzer test does not constitute communicative evidence of the type to which the fifth amendment privilege against self-incrimination is directed. As the Court said in 384 U. S. at 765, 86 S.Ct. at 1832, 16 L.Ed.2d at 916, evidence of tests such as the Breathalyzer test does not constitute "* * * even a shadow of testimonial compulsion upon or enforced communication by the accused * * *."[3]

---

[3]The Court in *Schmerber,* however, did point out that "[s]ome tests

Perhaps the significant language of the majority opinion is to be found in 384 U. S. at 764, 86 S.Ct. at 1832, 16 L.Ed.2d at 916, where the Court said: "On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to finger-printing, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

The courts of many states have specifically accepted the rule adopted in *Schmerber*. *See, e.g., Walker* v. *Department of Motor Vehicles*, 274 Cal.App.2d 793, 79 Cal. Rptr. 433 (1969); *State* v. *Trotter*, 4 Conn. Cir. 185, 230 A.2d 618 (1967); *State* v. *Bock*, 80 Idaho 296, 328 P.2d 1065 (1958); *Lee* v. *State*, 187 Kan. 566, 358 P.2d 765 (1961); *State* v. *Stevens*, 252 A.2d 58 (Me. 1969); *Opinion of the Justices*, 255 A.2d 643 (Me. 1969); *Mauldin* v. *State*, 239 Md. 592, 212 A.2d 502 (1965); *Blydenburg* v. *David*, 413 S.W.2d 284 (Mo. 1967); *Prucha* v. *Department of Motor Vehicles*, 172 Neb. 415, 110 N.W.2d 75 (1961); *Bean* v. *Strelecki*, 101 N.J. Super. 310, 244 A.2d 316 (1968); *Commonwealth* v. *Gordon*, 431 Pa. 512, 246 A.2d 325 (1968);

---

seemingly directed to obtain 'physical evidence,' for example, lie detector tests measuring changes in body function during interrogation, may actually be directed to eliciting responses which are essentially testimonial." 384 U. S. at 764, 86 S.Ct. at 1832, 16 L.Ed.2d at 916. Obviously, the Court in *Schmerber* recognized that the importance in distinguishing between evidence of such tests which is admissible and inadmissible will not always fit into any well-established pattern. It is also important to realize that the admission of evidence obtained by the administration of such tests may come into question on the competence and expertise of those who administer or interpret the test. *See State* v. *Gregoire*, 88 R. I. 401, 148 A.2d 751 (1959).

*Walton* v. *City of Roanoke,* 204 Va. 678, 133 S.E.2d 315 (1963). *See also* 14 Blashfield, *Automobile Law and Practice,* §468.41 n. 12 (3d ed.) ; 8 Wigmore on Evidence §2265 (McNaughton rev. 1961).

It appears to us that the great weight of authority supports the conclusion that the "* * * privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." *Schmerber* v. *California, supra,* at 764, 86 S.Ct. at 1832, 16 L.Ed.2d at 916. We, therefore, conclude that the defendant's fifth amendment privilege against self-incrimination was not violated by the introduction into evidence of the results of the Breathalyzer test submitted to by him.

The question certified under G. L. 1956 (1969 Reenactment) §12-22-10, are returned to the District Court unanswered, and the case is remanded to the District Court for further proceedings.

## Appendix A

1. Is a suspension of a motor vehicle operator's license by the State a penalty?

2. Is the requirement that a person submit to a chemical test of his breath, blood or urine or other bodily substance as a consequence of his operation of a motor vehicle on the public highways of the State a violation of the immunity against self-incrimination as provided in Article I, Section 13 of the Rhode Island Constitution and Article V, of the Amendments to the United States Constitution which is made applicable to the State by virtue of Article XIV, Section 1, the due process clause thereof?

3. If the answer to Question #1 is affirmative and #2 negative, may the State consistently with Article I, Section 13, of the Rhode Island Constitution and Article V, of the Amendments to the United States Constitution which is made applicable to the State by virtue of Article XIV, Section 1, the due process clause thereof, require a motor vehicle operator to submit to an examination of his breath, blood or urine or other bodily substance for the

purpose of an examination and analysis of same in order to use the results of said examination in a criminal complaint against said operator and impose the penalty of suspension of his motor vehicle operator's license if he refuses to submit to such examination?

4. May the State pursuant to G. L. 1956, 31-27-2.1, consistently with Article I, Section 10, of the Rhode Island Constitution, and Article XIV, Section 1, the due process clause of the Amendments to the United States Constitution, absent an express act of waiver, imply a waiver of the immunity against self-incrimination upon operation of a motor vehicle on the public highway of this State?

*Richard J. Israel*, Attorney General, *Donald P. Ryan*, Asst. Attorney General, *Henry Gemma, Jr.*, Special Asst. Attorney General, for plaintiff.

*Aram K. Berberian*, for defendant.