[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This case is before this Court on appeal from a final decision and order issued by the Department of Environmental Management (DEM) denying Walter J. Kukulka's Individual Septic Design System (ISDS) application and variance requests, pursuant to G.L. 1956 (1988 Reenactment) § 42-35-15.
FACTS/TRAVEL
Walter J. Kukulka, d/b/a Loft-Har Properties, Inc. (hereinafter Kukulka) is the owner of a parcel of land in the Town of Westerly described as Lot No. 3 on Westerly Tax Assessor's Plat No. 179. Decision and order, April 29, 1992, at 3. When Kukulka purchased this property in May, 1989, a three-story building and a two-hundred (200) space parking lot were located on the parcel. (Tr., July 18, 1991, at 32) The building contained a gas station, a small retail store and an indoor storage garage for cars on the first floor, two two-bedroom apartments on the second floor and eleven bedrooms on the third floor. Id. at 32-37. Kukulka proposes to renovate the existing building by eliminating the gas station and creating a commercial retail complex (approximately 15 retail stores), two two-bedroom apartments and 12 hotel/motel units. Id. at 54-56.
Currently a septic system known as a cesspool is servicing the property. Testimony at the Administrative Adjudication Hearing revealed that this cesspool is essentially a hole in the ground, the sides of which are constructed of loose boulders.Id. at 81, 138. There is also some evidence that the present septic system has failed. (Tr., September 12, 1991, at 4) Upon discovery of the malfunctioning system, Kukulka filed an application for a permit to repair the septic system with DEM's Division of Groundwater and Individual Septic Disposal System (ISDS) in November, 1989. (Jt. Exhibit 1) However, the Division determined that the application was not suitable as a repair and informed Kukulka that his proposed ISDS must meet new construction criteria. (Jt. Exhibit 2) Therefore, on November 7, 1989 Kukulka filed a variance application with the Department along with supporting data. The application requested three (3) variances from the SD-Rules and Regulations Establishing MinimumStandards Relating to Location, Design, Construction andMaintenance of ISDS (1980). In particular, Kukulka sought a variance from the following minimum standards:
 1. SD 10.02 which requires a minimum of three (3) feet vertical separation between the bottom of the stone underlying the seepage system and the maximum elevation of the groundwater;
 2. SD 10.07 providing that soils with a percolation rate of over 40 minutes per inch is unsuitable for the disposal of sewage by any means of subsurface leaching; and
 3. SD 15.02 which prohibits the installation of an ISDS in any area where the groundwater is within four (4) feet of the original grade unless the application satisfies certain requirements.
On January 11, 1991, the Division, through the variance board, denied Kukulka's application and variance requests concluding that Kukulka's proposed ISDS design was not in the best public interest. (Jt. Exhibit 14) Kukulka then filed a timely request for an adjudicatory hearing which was held on July 18, July 19, August 22, August 23, September 12 and September 19, 1991. Thereafter, the Administrative Hearing Officer (AHO) issued a Recommended Decision and Order recommending that Kukulka's variance application be denied. Decision and order, April 29, 1992. The AHO found that the Kukulka had not met his burden of proving by clear and convincing evidence that the waste from the proposed ISDS will not pollute any body of water, will not create a public or private nuisance and will not be a danger to the public health. Id. at 40. On April 29, 1993 the Director accepted the AHO's findings of fact and conclusions of law and entered the Recommended Decision and Order as a Final Agency Decision thus denying Kukulka's variance requests. Id. at 42.
On appeal, Kukulka raises three issues for the Court's consideration. Kukulka first argues that DEM's denial of his variance request is erroneous because it is not based upon substantial evidence. Kukulka also urges this Court to apply the law of nonconforming uses to situations such as the present where a non-conforming system is to be replaced. Finally, Kukulka argues that the "hardship" standard imposed by SD 20.01(b) is unconstitutional.
STANDARD OF REVIEW
This Court is granted jurisdiction to review decisions of the Department of Environmental Management pursuant to G.L. 1956 (1988 Reenactment) § 42-35-15. This statute also mandates the scope of review permitted by this Court. More specifically, section 42-35-15(g) provides:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Central to the grant of jurisdiction in this statute is the mandate that this court must not substitute its judgment for that of the agency in regard to the credibility of witnesses or the weight of the evidence. Costa v. Registrar of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict ofInterest, 509 A.2d 453, 458 (R.I. 1986). Rather, this Court must confine itself to a review of the record to determine if "legally competent evidence" exists to support the agency decision.Turner v. Department of Employment Security, 479 A.2d 740, 742 (R.I. 1984). Thus, the court will reverse factual conclusions of administrative agencies only when those findings are "completely bereft of competent evidentiary support in the record." Sartorv. Coastal Resources Mangt., Council, 542 A.2d 1077, (R.I. 1988). However, questions of law decided by Administrative Agencies are not binding on the court. Narr, Wire Co. v.Norberg, 376 A.2d 1, 118 R.I. 596 (1977). Therefore, this court "may review questions of law to determine what the law is and its applicability to the facts." Chenot v. Bordeleau, 561 A.2d 891, 893 (R.I. 1989); Carmody, 509 A.2d at 458.
DISCUSSION
Kukulka first argues that there is insubstantial evidence in the record to support the hearing officer's decision. In particular, Kukulka assigns error to the AHO's reliance on the testimony of DEM's expert, James Fester, as well as to the AHO's finding that a holding tank is a feasible alternative to the present system and that there would be an increase in daily flow upon completion of the renovation.
In reviewing the entire record, this Court finds substantial evidence to support DEM's decision. First, this Court cannot find merit to Kukulka's argument that the AHO should not have relied on James Fester's testimony regarding the effectiveness of the proposed system. Kukulka argues that Fester's lack of experience with the particular system proposed renders him unqualified to offer an expert opinion under Rule 702 of the Rhode Island Rules of Evidence. However, Kukulka stipulated to the expertise of Fester in the area of engineering, sanitation and public health. (Prehearing Conference Record, July 8, 1991, p. 4; Tr., September 19, 1991, at 7) Therefore, Fester was qualified, as Kukulka so stipulated, to analyze a proposed system and offer an opinion as to the system's effectiveness. Fester's lack of first hand experience with the system is just one factor in determining the weight to assign to his testimony. Mindful that this Court must not substitute its judgment for that of the agency in regard to credibility of witnesses, this Court finds no error in the AHO's reliance on the expert testimony of James Fester. Costa v.Registrar of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988).
Additionally, this Court finds no error in the AHO's conclusion that a holding tank is a feasible alternative to the current system and that there would be an increase of daily flow into the system. In reviewing the entire record, this Court finds legally competent evidence to support the AHO's decision. For example, while acknowledging that a holding tank is usually a "last resort" remedy, DEM expert James Fester testified that based on the adverse conditions of the site, the currently failed system and a high risk of the proposed system failing, Kukulka's "only option" is a holding tank and an alarm system to indicate when the holding tank has to be pumped. (Tr. September 19, 1991, at 36) In addition, Kukulka testified that he had plans to open a small retail complex and to open the currently vacated motel/hotel rooms to the public. There is a reasonable inference that this increased public use of the building will increase daily flow into the system. Therefore, this Court finds no error in the AHO's findings and conclusions.
Kukulka next relies on the law of non-conforming uses as applied in zoning cases to argue that DEM should have granted his requested variances. Essentially, in a zoning context a non-conforming use is one "which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after . . . although it does not comply with the zoning restrictions." Anderson, American Law of Zoning 3d. § 6.01, at 446 (1986 Lawyers Coop.). Under zoning law, facilities connected with a non-conforming use may be modernized. Gagne v. Lewiston CrushedStone Co., Inc., 367 A.2d 613, 623 (Me. 1976). However, a change of use of the premises eliminates the exemption of the nonconforming use from the zoning ordinance. Harmel Corp. v.Members Zoning Bd. of Review, 603 A.2d 303, 306 (R.I. 1992). A change of use occurs when the proposed use is "substantially different from the nonconforming use to which the premises were previously put." Jones v. Rommell, 521 A.2d 543, 545 (R.I. 1987).
Kukulka maintains that with his proposed septic facility, "the use will be substantially changed from polluting to non-polluting." Plaintiff's Brief, p. 26. Kukulka also argues that this repair/replacement of the cesspool will, at a minimum, result in no more pollution than the current system is emitting. Therefore, according to Kukulka, it would defy common sense not to apply the law of nonconforming uses and grant the variances.
One flaw in Kukulka's argument is the assumption that the proposed system will be non-polluting. The AHO expressly found that the proposed ISDS "will . . . result in untreated or partially treated sewage entering Watch Hill Cove." Decision and order, April 29, 1992, p. 38. Therefore, the proposed ISDS will not result in preventing pollution of the cove.
Further, this Court finds no merit in Kukulka's argument that DEM should be indifferent to the proposal and allow the variances because the repair/replacement will result in no more pollution than the current system is emitting. DEM is charged by statute with the duty of protecting the public interest, the public health and the natural resources of the state. G.L. 1956 (1988 Reenactment) § 42-17.2-2. If DEM were to allow the installation of a system found to be hazardous to the public health just because it purportedly is less onerous than the current situation, DEM would be failing in its duty as directed by the General Laws. This is true especially in light of the fact that there is a reasonable alternative available: a holding tank, which would prevent pollution and thus not be harmful to the public health.
Furthermore, a key distinction between zoning ordinances and DEM regulations prevents this Court from applying the law of nonconforming uses in the instant case. Zoning ordinances, for the most part, affect aesthetic characteristics of an environment. DEM and the ISDS regulations protect the environment itself. If this Court were to accept the law of non-conforming uses, it essentially would be putting a stamp of approval on the continued destruction of the environment. This the Court will not do. Therefore, this Court finds that in the instant case application of the law of nonconforming uses would contravene legislative intent and the duty imposed upon DEM pursuant to §42-17.1-2, namely the protection of the public health and the state's natural resources.
Finally, Kukulka argues that SD 20.01(b) of the ISDS Rules and Regulations, which requires an applicant to prove unnecessary hardship prior to being granted a variance, violates the applicant's right to equal protection and due process. According to ISDS Rules and Regulations, a variance will be granted only if the Review Committee finds that the variance will not be contrary to the public interest or public health. SD 19.02. If the Review Committee denies the requested variance, the applicant may appeal to the Administrative Adjudication Division (AAD). SD 20.01. On appeal the applicant bears the burden of proving by clear and convincing evidence that the variance will not be contrary to the public interest or public health. SD 20.01(d). Additionally, the applicant must demonstrate that literal enforcement of the minimum standards will result in unnecessary hardship to the applicant. SD 20.01(b). It is the addition of this standard, unnecessary hardship, at the AAD level that Kukulka argues violates his constitutional right to equal protection and due process.
The Rhode Island Supreme Court has noted that a party challenging the constitutionality of a statute must satisfy the requirement of standing by showing "injury in fact." Berberianv. Solomon, 405 A.2d 1178, 1180 (R.I. 1979). That Court has also noted that it will not pass upon the constitutionality of a statute where, if it were found to be unconstitutional, the party who had challenged its constitutionality would take nothing.State ex rel. Widergren v. Charette, 290 A.2d 858, 861,110 R.I. 124 (1972).
In the instant action, Kukulka bore the burden of proving in addition to unnecessary hardship, that his proposal was not contrary to the public interest or public health. The Hearing Officer found, and this Court concurs, that Kukulka did not meet his burden of proving that the proposed ISDS was not contrary to the public interest or public health. Therefore, even were this Court to agree with Kukulka and find that the unnecessary hardship standard is unconstitutional, Kukulka would still not be entitled to a variance because he has failed to prove that his proposal is not contrary to public health or public interest. Kukulka would take nothing by this Court's passing on the constitutionality of the unnecessary hardship standard and he thus lacks standing to challenge the constitutionality of the unnecessary hardship standard.
Accordingly, for the reasons stated herein, Kukulka's appeal is denied and the Department of Environmental Management's decision is affirmed.
Counsel shall submit an appropriate order for entry within 20 days.